## MAGNOLIA PETROLEUM COMPANY et al., Appellants,

### v.

### E. (Emil) BIEL et al., Appellees.

### No. 12864.

Court of Civil Appeals of Texas.

San Antonio.

Dec. 7, 1955.

Rehearing Denied Jan. 4, 1956.

R. T. Wilkinson, Jr., Earl A. Brown, Chas. B. Wallace, Dallas, Ed. Mann, Laredo, Shelley & Shelley, Austin, for appellants.

Lewright, Dyer, Sorrell & Redford, Corpus Christi, M. J. Raymond, Laredo, John Ben Shepperd, Atty. Gen., John Milton Richardson, Asst. Atty. Gen., for appellees.

NORVELL, Justice.

This is a vacancy case. After a trial to a jury, the district court rendered judgment upon special findings establishing the vacancy and awarding Biel, the plaintiff below, judgment for title and possession of Survey No. 2403, situated in Webb County, Texas. The State of Texas, as intervener, was awarded an undivided one-sixteenth interest in and to all the minerals underlying said Survey No. 2403, except sulphur and similar substances, in which the State was awarded a one-eighth interest. Magnolia Petroleum Company, Fannie Trigg Coopwood and others, defendants below and appellants, claim title to the surface and underlying minerals of Surveys Nos. 1093 and 1094, situated in Webb County. It is their contention that the land purportedly embraced within the boundaries of Survey No. 2403 is actually contained within the senior Surveys Nos. 1093 and 1094, and that there is no vacant and unappropriated land lying between the west lines of said Surveys Nos. 1093 and 1094 and the tier of Surveys to the west, which are numbered 1644, 1643, 1641, 1531 and 1532.

The briefs of both appellants and appellees contain sketches prepared from the maps and field notes introduced in evidence, which set forth the respective theories of the parties. For illustrative purposes, we have incorporated within this opinion the sketch designated as Map A in appellees' brief, as it represents the construction of the surveys involved which was sustained by the judgment. The questions presented by the appeal seem to be questions of law and may be briefly stated as follows: (1) Should the Jarvis Surveys Nos. 1091, 1092, 1093, 1094 and 1095, be considered as a system or block of surveys for locative purposes? and, if so, (2) May such surveys be more satisfactorily con-

structed and located on the ground by giving controlling effect to known points located in the north portion of the system or from adjoinder and passing calls contained in field notes describing the southern portion of the structure and other surveys in the vicinity?

Map "A" above referred to is as follows:

Map A

The hatched lines shown thereon indicate the position of Survey No. 2403. The south boundary line of Survey No. 2403 is represented by the line connecting points C and D, and although the map indicates a vacancy south of this line, between Surveys Nos. 1532 and 1095, for example, that particular area is not in dispute in this suit. The senior surveys in the area are the four Peterson Surveys, Nos. 489, 490, 491 and 492, which were laid out in the year 1875. The present record indicates that the location of these surveys is uncertain, except from the standpoint of actual occupancy. No monuments on these surveys could be located by either Howard or Foster, the surveyors for the appellants and appellees, respectively. While appellees take the position that the west corner of Survey No. 492 is on or near the west line of Surveys Nos. 1093 and 1094, their surveyor, Foster, in making up the field notes for Survey No. 2403, nevertheless allowed for a triangular cut-out, indicated by the letters B, R and Y, in order to avoid a possible conflict with the Peterson.

It is difficult to escape the conclusion that the Jarvis Surveys Nos. 1091, 1092, 1093, 1094 and 1095, constitute one system of surveys. All of them were laid out within a five-day period. In the sketches prepared by Jarvis to accompany the notes of these surveys, the Peterson sections, two 1876 Jarvis surveys, Nos. 913 and 914, together with Surveys Nos. 1091 to 1095, inclusive, are shown. Beck v. Gulf Production Co., Tex.Civ.App., 113 S.W.2d 258, wr. ref. Duval County Ranch Co. v. Rogers, Tex. Civ.App., 150 S.W.2d 880. The location of the Peterson surveys, with reference to Surveys Nos. 1091, 1093 and 1094, is shown by these sketches as being practically identical with the position designated on the heavy lines of the plat above set out; that is no conflict between the Peterson and Jarvis systems is indicated and the north and west corners of the Peterson are shown approximately at the points designated by the letters Q and Y on the sketch.

Surveys Nos. 1092 and 1093 were laid out on February 17, 1878. The field notes for Survey No. 1092 call for a stake at the northwest corner which is also the southwest corner of Survey No. 913, and a Chapote as a bearing tree. The notes likewise call for a stake at the southwest corner, a distance of 1900.8 varas from the northwest corner.

E. J. Foster, appellees' surveyor, testified that he was seventy-one years of age, the son of Arthur Foster, also a surveyor, and the grandson of S. M. Jarvis, who laid out the surveys above mentioned; that he had been over the territory here involved in the year 1912, and located the original bearing tree at the northwest corner of Survey No. 1092; that when he came south he found a partially rotted stake at about the distance designated for the southwest corner where he placed a petrified rock; that upon running west from this point (southwest corner of Survey 1092) he found another stake, a squared mesquite post four inches in diameter, at a distance of about 101 varas; that he also placed a petrified stone at this point and that the month before the trial he was in the area and located the petrified stone which he had used in 1912 to mark the northwest corner of Survey No. 1093. Thatcher v. Matthews, 101 Tex. 122, 105 S.W. 317; Runkle v. Smith, 63 Tex.Civ.App. 549, 133 S.W. 745; Taylor v. Higgins Oil & Fuel Co., Tex.Civ.App., 2 S.W.2d 288.

As to the location of this point, we need not further detail Foster's testimony. A number of other points on Surveys Nos. 423, 913 and 914 were also located with reasonable certainty, and these tend to confirm Foster's ground locations of the southwest corner of Survey No. 1092 and the northwest corner of Survey No. 1093. It appears that D. C. Howard, appellants' surveyor, did not dispute Foster's location of the southwest corner of Survey No. 1092.

The field notes for Survey No. 1093 begin at a stake in the south line of Survey No. 1091. However, the notes may be reconstructed, Standefer v. Vaughan, Tex. Civ.App., 219 S.W. 484, by using the southwest corner of Survey No. 1092 (an estab-

lished corner) as the place of beginning, with the following result:

Beginning at the southwest corner of Survey No. 1092 (point 7 on the sketch), thence west 78 varas to the northwest corner of Survey No. 1093 (point A on the sketch—a point actually found by Foster on the ground in 1912, but his distance was 101 varas); thence south at 2458 varas to a stake for the south corner of this survey; thence north 50 degrees east at 23 varas, the west corner of Survey No. 492 (an indefinite point in that no monument was found here); thence with the line of Survey No. 492 at 1923 varas, the north corner of Survey No. 492, at 2344 varas pass Prieto Creek, at 3824.7 varas, the north corner of Survey No. 491; thence north 4 varas to a point in the south line of Survey No. 1091; thence west with the south line of Survey No. 1091 at 952 varas, the southwest corner of Survey No. 1091, and southeast corner of Survey No. 1092, and with the south line of Survey No. 1092 at 1152 varas pass the Arroyo Prieto and at 2852 varas, the southwest corner of Survey No. 1092, the point of beginning.

The location of Survey No. 1093 upon the ground, from known and established points and lines, presents no great difficulty. It is readily seen that the western boundary of this survey, according to its notes is a line running directly south from the northwest corner—Point A of the sketch. It further seems inescapable that Jarvis intended that the western boundary line of Survey No. 1094 should be upon approximately the same line as the western boundary of Survey No. 1093, with allowance for the 23 vara jog at or near where Jarvis supposed the west corner of Peterson Survey No. 492 was located. This view is strengthened by the field notes and supported by Jarvis' accompanying sketches. Survey No. 1094 was laid out on February 18, 1878, and its field notes read as follows:

"Beginning at Stake the West corner of No. 492 made for the State by virtue of Scrip ⅒₆ Seale, Morris & Seale.

"Thence South 40° East with the line of 492 at 1900.8 vs. pass the South Corner of No. 492 & W. Corner of No. 489 made for C. M. Mackdonell by virtue of Scrip No. ½₅ issues to Seale, Morris & Seale, & with the line of No. 489, at 2240 vs. at 2380 vs. & 2460 vs. pass water courses of Prieto Creek, at 2957 vs. a stake for N. E. Corner of this Survey.

"Thence South 768 vs. to Stake for S. E. Corner a Mesqt. 4 in. dia. mkd. x bears S. 5 E. 15 vs. & another 4 in. dia. bears N. 61 E. 11 vs.

"Thence West at 350 vs. pass the Arroyo Prieto at 880 pass a Water hole, at 1900.8 vs. a Stake for S. W. Corner a Clepano bush bears West 20 vs. Thence North at 50 vs. the Arroyo Mujeres course N. E. at 3033 vs. to the place of beginning."

While the notes contain no express call to those of Survey No. 1093, both call for a common point, namely, a stake at the west corner of Peterson Survey No. 492, and while the exact location of such point at the present time is not designated by an original monument, we must conclude that the stake which Jarvis referred to as the west corner of Survey 492, on February 17, 1878, was the same stake mentioned by him in making a record of this work for the following day.

Appellants' argument that the Jarvis 1878 surveys should be constructed from the south is persuasive and based primarily upon Jarvis' calls for adjoinder contained in his 1882 field notes for the junior Surveys Nos. 1531 and 1532. The southwest corner of Survey No. 1095, as described by Jarvis in 1878, was a stake from which a "Retama tree 4 in. dia. bears N. 22 E. 5½ vs. mkd. XX." His notes for Survey No. 1531 (1882) call for a stake at the southwest corner of 1095, with no mention of the bearing tree, thence north with the west boundary line of 1095 at 501 varas, a stake for the southeast corner of this Survey (No. 1531); thence north at 1400 varas pass the northwest corner of Survey No. 1095, etc. The beginning point called

for in Jarvis' field notes for Survey No. 1532 is "a stake on the West boundary line of Survey 1095, which is the S. E. Cor. of Survey No. 1531." The next call is, "Thence South at 501 vrs. pass S. W. Cor. of Survey No. 1095 * * *."

It is indicated that Jarvis intended that the west boundary line of Surveys Nos. 1094 and 1095 should also constitute in part the east boundary line of Surveys Nos. 1531 and 1532, and that the point which he took as the beginning point in laying out Survey No. 1531, namely, a stake at the southwest corner of Survey No. 1095, was the stake which he had himself set some four years previously. In addition to these circumstances was the testimony of Howard that the passing calls upon the south boundary line of Survey No. 1094, i. e., the Arroyo Prieto and a water hole could be reasonably satisfied today.

As shown by the sketch herein set out, there are three French surveys, Nos. 1641, 1643 and 1644, lying to the north of the 1882 Jarvis surveys. The east boundary line of these surveys is an extension of the east boundary line of Surveys Nos. 1531 and 1532, and for more than fifty years there has been a fence maintained along this line indicated by the x marks extending from points E to O upon the plat. It is reasonable to believe that at the time this fence line was established at least some of the original stakes and monuments along the line could be identified.

French, in the original field notes for Survey No. 1644, the northern tract of this particular French block, calls for the northeast corner of Survey No. 1643 as the beginning point (the southeast corner of Survey No. 1644). The next call is "thence North 1914 varas set a post for the N. W. Cor. on the West line of Survey No. 1092." This call to the west line of Survey No. 1092 cannot be satisfied without crossing the fence generally recognized as being along the east boundary line of the survey and doing violence to course and distance calls of the tract and distorting the configuration of the survey. A mistake in the call for adjoinder to the west line of Survey No. 1092 is strongly indicated. In fact, as shown by the sketch, a scrap survey, No. 2338, was located in 1937, between the east line of Survey No. 1644 and the west line of Survey No. 1092. Corrected field notes for Survey No. 1644 were prepared in 1940, which contain no reference to the west boundary line of Survey No. 1092, but, on the contrary, recognize the existence of Survey No. 2338, and calls for the corners and lines thereof.

The French field notes for Survey No. 1643 call for the west line of Survey No. 1093, while the notes for Survey No. 1641 locate the same immediately north of Survey No. 1531 (Jarvis), with the only adjoinder calls being to the northwest and northeast corners of Survey No. 1531. The dimensions of Surveys Nos. 1643 and 1531 are identical, being 1928 varas east and west by 1874 varas north and south. It appears that the point called for by Jarvis on the east lines of Surveys Nos. 1531 and 1532, although described by him as being also the southwest corner of Survey No. 1095, is not due south of the point fixed by Foster as and for the northwest corner of Survey No. 1093 (point A on the sketch), but, on the contrary, is some 670 varas west of a line projected south from such point.

As stated by the witness Howard, there were apparently some mistakes made in surveying this area, and three possible theories of construction are suggested: First, that Jarvis was mistaken in describing the stake which he selected as the beginning point of his Survey No. 1531, as the southwest corner of Survey No. 1095, Gerald v. Freeman, 68 Tex. 201, 4 S.W. 256, Standefer v. Vaughan, Tex.Civ.App., 219 S.W. 484; Second, that the northwest corner of Survey No. 1093 is not located at point A, as shown on the enclosed sketch, but, on the contrary, is located to the west of such point in the approximate position E designated on the plat, that is, along the fence line constructed about 1900 as and for the east boundary line of the tier of surveys numbered 1532, 1531, 1641, 1643 and 1644; Third, that Jarvis made a mis-

take in course in running his west lines of his 1878 surveys (Nos. 1093, 1094 and 1095) so that he actually ran to the vicinity of point O, shown on the sketch, and there established the southwest corner of Survey No. 1095, in the belief that said point was directly south of point A, except for the 23 vara jog at the juncture of Surveys Nos. 1093 and 1094. The theory last stated has little to recommend it, except as a possible method of reconciling the monumented locations of the southwest corner of Survey No. 1092 and the northwest corner of Survey No. 1093, with the southwest corner of Survey No. 1095, as called for by Jarvis in the field notes of the junior Surveys Nos. 1531 and 1532. It directly conflicts with the fence line running along the recognized east boundary line of Surveys Nos. 1532, 1531, 1641, 1643 and 1644 (points E to O on the sketch). The problem then becomes one of choice as to which point is the more reliable for construction purposes, the northwest corner of Survey No. 1093, supported as it is by the southwest corner of Survey No. 1092, or the southwest corner of Survey No. 1095, as established by Jarvis' calls in his notes for Surveys Nos. 1531 and 1532, which in turn have some support in the passing calls for the south line of Survey No. 1094, which is also the north boundary line of Survey No. 1095.

█■ It is established that the calls of a junior survey are admissible in evidence and may be considered in locating the lines and corners of a senior survey, when both surveys were made by the same surveyor and within a short space of time. Horne v. Moody, Tex.Civ.App., 146 S.W.2d 505. It is further a well-recognized general rule that whenever adjoinder between surveys is called for, the field notes thereof should not be construed so as to create a vacancy between them and thus dishonor the adjoinder calls. Harrison v. Manvel Oil Co., 142 Tex. 669, 180 S.W.2d 909; Kirby Lumber Company v. Gibbs Bros. & Co., Tex. Com.App., 14 S.W.2d 1013.

■■ However, neither the location made by aid of the field notes of the junior survey nor calls for adjoinder are necessarily controlling. The lines of the disputed surveys must be located by the "best evidence" available, Taylor v. Higgins Oil & Fuel Co., Tex.Civ.App., 2 S.W.2d 288; and, as heretofore pointed out, the southwest corner of Survey No. 1092 (point 7) and the northwest corner of Survey No. 1093, are established as monumented corners, and while it would seem unlikely that Jarvis in 1882 would mistake a point established by him in 1878 for the southwest corner of Survey No. 1095, it is even more unlikely that he would mistake the common point of Surveys Nos. 1093 and 1094 when it appears that these surveys were run on successive days. This common point, as stated above, was described by Jarvis as "a stake, the West corner of #492." We, therefore, conclude that in constructing the Jarvis surveys of 1878 the two monumented points in the northern part thereof must be given controlling effect. Stafford v. King, 30 Tex. 257; Phillips v. Ayres, 45 Tex. 601.

Appellants advance a further theory of construction which should be noticed, namely, that Surveys Nos. 1093 and 1094 should be constructed from the west corner of Survey No. 492. The beginning point of Survey No. 1094 is stated as the west corner of Survey No. 492, and this corner is likewise mentioned in the field notes for Survey No. 1093. It is contended that the present-day occupancy of the Peterson surveys, which has apparently continued for a number of years, should be accepted for the purpose of locating such corner. This would shift the Peterson surveys from the position shown by the heavy lines on the sketch to that indicated by the dotted lines, and the west corner of Survey No. 492 would be located approximately at the point indicated by the letter B rather than the letter Y. The Peterson surveys were originally constructed off the common inside corner of the four surveys and, according to the testimony, cannot now be located from any object or monument called for by Peterson. However, if we take the occupied position of the surveys at the present time in order to establish the west corner of Survey No. 492, and use this

point (B on the sketch) to establish the west line of Surveys Nos. 1093 and 1094, we would again be forced to dishonor the monumented and established point for the northwest corner of Survey No. 1093. This is not a suit between the owners of the Peterson surveys and those asserting title under Survey No. 2403, but the question here raised is whether or not the territory claimed to be in Survey No. 2403 is in fact located within the boundaries of the senior Surveys Nos. 1093 and 1094. As above mentioned, the field notes of said Survey No. 2403 exclude the triangular piece of land B R to Y, in order to avoid a possible conflict with the Peterson. It appears under the facts of this case that the northwest corner of Survey No. 1093 is a more definite and accurately fixed point than the suggested occupational location of the west corner of Survey No. 492. Upon returning to the field notes, we find that, except for the 23 vara jog in the west line, the west corner of Survey No. 492 was described as being south of the northwest corner of Survey No. 1093. This is where Jarvis supposed the point to be and where he showed it to be upon the sketches accompanying his field notes.

It is strongly indicated by the evidence that, for a number of years, it was generally supposed that points upon the east lines of Surveys Nos. 1532, 1531, and the surveys north thereof were directly south of the northwest corner of Survey No. 1093 (point A upon the sketch). E. J. Foster, appellees' surveyor, testified that he labored under this mistaken belief for a number of years, and some of his original and corrected field notes for surveys in the area, including those for Survey No. 2403, reflect this fact. While no theory of construction of the surveys involved will satisfy all reasonable inquiries and doubts, we are dealing with a situation in which one or more mistakes have undoubtedly been made. Hence we are forced to adopt that construction which under all the circumstances seems most reasonable and reliable. That construction is one which gives controlling effect to the monumented corner at the northwest corner of Survey

No. 1093. Stafford v. King, 30 Tex. 257; Taylor v. Higgins Fuel & Oil Co., Tex.Civ. App., 2 S.W.2d 288. In our opinion, this appears as a matter of law. If we be mistaken in this, then we are of the opinion that the findings of the jury which likewise support appellees' theory of construction, are supported by sufficient evidence and in turn support the judgment of the trial court.

Other matters contained in the briefs need not be discussed. The judgment of the trial court is affirmed.