11th Court of Appeals
Eastland, Texas
Opinion 
The City of Dallas
            Appellant
Vs.                  No. 11-03-00022-CV – Appeal from Dallas County
Ronald Hamilton
            Appellee
 
            Believing that the results of an internal affairs investigation showed that Ronald Hamilton,
a fire inspector for the City of Dallas, had engaged in organized crime related to gambling activities
and that he had violated several regulations of the City and of the City of Dallas Fire Department,
the City’s acting fire chief, Robert E. Melton, fired him. Hamilton appealed the termination to the
Civil Service Trial Board. After a hearing, the trial board ordered that Hamilton be reinstated but
did not award back pay or benefits. The City and Hamilton appealed the decision to the district
court. The district court upheld the reinstatement and awarded Hamilton $253,617.61 in back pay
and benefits, $159,310.55 for prejudgment interest, 500 hours of sick-time benefits, and $42,450.00
in attorney’s fees. The City appeals the district court’s decision to this court. We reverse and render
judgment upholding Hamilton’s termination. We also reverse the award of back pay, prejudgment
interest, restoration of sick-time benefits, and attorney’s fees; and we render judgment that Hamilton
take nothing from the City.
            The City hired Hamilton as a fire inspector in 1985. In June 1993, authorities arrested
Hamilton and charged him with engaging in organized criminal activities related to various gambling
offenses. When the authorities arrested Hamilton, the internal affairs section of the fire department
began an investigation. On July 16, 1993, the fire department issued an investigation notification
to Hamilton. Although Hamilton was required to file an answer to the allegations contained in the
notification, at first he did not. Instead, he furnished the fire department with a copy of a notice from
his attorney that neither he nor his attorney would respond. On July 23, 1993, the City filed an
additional allegation of insubordination as a result of Hamilton’s failure to respond. Hamilton later
answered some, but not all, of the questions. On September 17, 1993, the internal affairs
investigation was completed, and Acting Fire Chief Melton discharged Hamilton. The assistant city
manager approved the discharge.
            The State dismissed its charge against Hamilton “in the interest of justice” in January 1995. 
However, a federal indictment dated August 2, 1996, charged Hamilton and others with conspiracy
and with various criminal acts relating to their alleged involvement in a gambling operation. A jury
convicted Hamilton and the others on some, but not all, of the counts in the indictment. The United
States Court of Appeals for the Fifth Circuit reversed all of the convictions. The court noted in its
opinion that, while the activities of all of those charged “probably ran afoul of” a section of the
Texas gambling statutes other than the one that was argued by the government and submitted to the
jury, the evidence was not sufficient under the section of the statute that was actually charged and
presented to the jury, “bookmaking.” See United States v. Truesdale, 152 F.3d 443, 449-50 (5th Cir.
1998). 
            After the decision in Truesdale, Hamilton requested that the Civil Service Trial Board review
his termination. The three-person trial board conducted the requested hearing on December 18,
1998; on February 10, 1999; and on February 11, 1999.
            The notice of termination that the City originally gave to Hamilton cited the following
violations of the City of Dallas Personnel Rules and the Dallas Fire Department Rules and
Regulations:
Sec. 34-35 FAIR EMPLOYMENT PRACTICES
 
(c) Employee responsibilities.
 
An employee shall:
 
            (5) conduct himself on and off the job so as to deserve the respect and trust
of city management and the community. 
 
Sec. 34-36       RULES OF CONDUCT
 
            (b) Unacceptable conduct. The following types of conduct are unacceptable
and may be cause for corrective discipline in the form of reprimand, suspension,
demotion, or discharge depending upon the facts and circumstances of each case. 
The examples given are typical but not all-inclusive. 
            (10) Insubordination is exemplified by, but is not limited to, the following
violations:
 
            (A) Willful failure or refusal to follow the specific orders or
instructions of a supervisor or higher authority.
                                                   
            (14) Misconduct is any criminal offense or immoral conduct, during or off
working hours, which, on becoming public knowledge, could have an adverse effect
on the city or on the confidence of the public in city government. 
 
            (15) Disregard of public trust is any conduct, during or off working hours,
which, on becoming public knowledge, could impair the public’s confidence or trust
in the operation of city government. 
 
Dallas Fire Department Rules and Regulations
 
            GENERAL CONDUCT
 
5-2 All members will:
 
            5-2.2 Not violate any provisions of the Code of Conduct; rules, regulations,
and procedures of the Fire Department; Civil Service Rules and Regulations; City
Charter; City Ordinance; Personnel Rules and Regulations of the City of Dallas; state
and/or federal laws. In the event of improper action or breach of discipline, it will
be presumed that the member was familiar with the law, rule, regulation, policy,
procedure, or directive in question. 
 
            5-2.3 Be responsible for fulfilling the public’s trust, which is any conduct, on
or off duty, which on becoming public knowledge could impair the public’s
confidence or trust in the operation of the Department or the public’s confidence or
trust in the integrity of the members of the Department.
 
            5-2.5 Not engage in any conduct which would constitute conduct unbecoming
a member of the Department. Conduct unbecoming a member of the Department
includes any unethical or otherwise reprehensible act which law-abiding, self-respecting citizens would find repugnant and which would seriously damage the
integrity of the individual and the Department and would result in lessened
confidence of the public in the Department and/or its personnel. 
 
            5-2.6 Not engage in any personal conduct or act which, if brought to the
attention of the public, could result in justified unfavorable criticism of that member
or the Department. 
 
            5-3 All members when on duty will:
 
                        5-3.15 Refrain from any act of insubordination. 
 
Insubordination includes, but is not limited to:
 
            5-3.15.2 Willfully disobeying the lawful order of an officer or supervisor.
 
            5-3.39 Not carry any type of paging device or similar notification device
except as authorized by the Chief of the Department for Department business.
 
            As provided by Section 34-40(m) of the City’s personnel rules, the trial board conducted the
hearing in two phases. In the first phase of the hearing, the trial board unanimously held that 
Hamilton violated the City of Dallas Personnel Rules set forth in Sections 34-36(b)(10)(A)(insubordination) and 34-36(b)(15)(disregard of public trust) and the Department Rules
and Regulations set forth in 5-2.2 (violation of personnel rules and regulations); 5-2.3 (public trust);
and 5-3.15.2 (insubordination). By a majority of two to one, the trial board found that Hamilton did
not violate Department Rules 5-2.5 (conduct unbecoming a member of the department) and 5-2.6
(conduct resulting in justified unfavorable criticism). The City dismissed other violations.
            In the second phase of the hearing, the trial board reviewed the appropriateness of the
discipline imposed for the violations. At the conclusion of the second phase of the hearing, the trial
board voted by a two-to-one majority to reinstate Hamilton without back pay and without benefits.
            The City and Hamilton both appealed the decision of the trial board to the district court. The
district court reversed the trial board’s findings that were adverse to Hamilton and found that the City
did not present evidence showing a reasonable belief that Hamilton had violated the City of Dallas
Personnel Rules and Dallas Fire Department Rules and Regulations. The district court also found
that no reasonable person would have taken the same disciplinary action against Hamilton and
ordered that Hamilton’s reinstatement was with back pay, interest, and other benefits. The district
court also awarded attorney’s fees to Hamilton.
            The City brings six issues on appeal. First, it asserts that the district court erred in upholding
the trial board’s decision to reinstate Hamilton. Next, the City contends that the district court erred
when it reversed the trial board’s findings that Hamilton had violated the various provisions of the
rules and regulations of the City and of the fire department. The City also contends that the district
court erred when it awarded back pay to Hamilton. In Issue Nos. 4, 5, and 6, the City asserts that,
because of its immunity, the district court erred when it awarded Hamilton back pay, benefits, and
prejudgment interest; that the judgment was outside the district court’s authority; and that the district
court considered evidence outside the administrative record.  
            Section 34-40(o) of the City of Dallas Personnel Rules provides that an appeal to a district
court must be decided upon the district court’s review of the record of the hearing. A review of an
administrative order by the district court is de novo. TEX. LOCAL GOV’T CODE ANN. § 143.015
(Vernon 1999). The district court conducts the review under the substantial evidence rule. 
Firemen’s and Policemen’s Civil Service Commission v. Brinkmeyer, 662 S.W.2d 953 (Tex.1984). 
In this case, the City’s personnel rules limit the review on appeal to the record before the trial board. 
The findings and conclusions of an administrative body are presumed to be supported by substantial
evidence, and the party challenging the findings has the burden to show that there is a lack of
substantial evidence. Bustamante v. Bexar County Sheriff’s Civil Service Commission, 27 S.W.3d
50 (Tex.App. – San Antonio 2000, pet’n den’d). 
            Substantial evidence is more than a scintilla and is enough relevant evidence such that a
reasonable mind could come to the same conclusion. Firemen’s and Policemen’s Civil Service
Commission v. Brinkmeyer, supra. Even though the evidence preponderates against the
administrative decision, that evidence might constitute substantial evidence and require that a
reviewing court uphold the decision. Texas Health Facilities Commission v. Charter Medical-Dallas,
Inc., 665 S.W.2d 446, 452 (Tex.1984). A reviewing court may not substitute its judgment for that
of the administrative body. Trapp v. Shell Oil Co., 198 S.W.2d 424, 436 (Tex.1946). The test is not
whether the agency reached the correct conclusion but whether some reasonable basis exists in the
record for the agency’s action. Texas Health Enterprises, Inc. v. Texas Department of Health, 954
S.W.2d 168 (Tex.App. – Austin 1997, no pet’n). An administrative order will not be set aside merely
because evidence was conflicting or disputed or because the evidence did not compel the result
reached by the agency. Substantial evidence deals only with the reasonableness of the administrative
order not with its correctness; and a reviewing court may not set aside the order simply because it
would have reached a different conclusion. Firemen’s and Policemen’s Civil Service Commission
v. Brinkmeyer, supra.
              There is substantial evidence upon which a reasonable person could reach the conclusion that
Hamilton violated the City of Dallas Personnel Rules and the Dallas Fire Department Rules and
Regulations by being insubordinate. On July 16, 1993, he was given an investigation notification
which contained the allegations against him, and he was notified that he had until July 22, 1993, to
respond. The City informed Hamilton that any statements he made would not be used against him
in any criminal proceeding and that, if he failed to answer the questions, the City could terminate him. 
After Hamilton received the notice, he called the fire department and asked that the City allow his
lawyer to be present when they questioned him. He was told that his lawyer could not be present. 
Hamilton’s lawyer prepared a letter brief to the fire department in which he argued that Hamilton had
a right to refuse to answer questions without fear of termination. Hamilton presented this letter to the
fire department instead of answering any questions. When Hamilton did not answer the allegations
by July 22, 1993, the City sent out another investigation notification in which it added an
insubordination allegation arising from his failure to answer as ordered.
            On August 11, 1993, Hamilton went to the fire department to give a statement. He testified
that his plan was to decline to answer any question that he did not understand until he could talk to
his lawyer. Hamilton was asked if he had ever placed an illegal gambling bet, and he refused to
answer. Later, Fire Department Internal Affairs Section Chief Debra K. Carlin gave Hamilton a set
of written questions. She sent the questions in an effort to clarify some of the answers given at the
August 11 interview. Hamilton refused to answer one of the written questions because he did not
understand it. Acting Fire Chief Melton testified that insubordination is a serious violation that can
alone merit discharge. Hamilton was given a direct order by his supervisor, and the evidence shows
that he did not follow the order. There was more than a scintilla of evidence before the trial board
to show that Hamilton committed an insubordination violation. Further, Hamilton did not meet his
burden to show that there was no substantial evidence to support the finding. The district court erred
when it reversed the finding of the trial board regarding insubordination.
            In his notice of termination to Hamilton, Acting Fire Chief Melton also stated that the facts
which he reviewed showed that Hamilton had engaged in organized criminal activity. As it existed 
 
at the time of the alleged violations in this case, former TEX. PENAL CODE § 71.02(a)(2) (1991)
provided, in relevant part, as follows: 
            (a) A person commits an offense if, with the intent to establish, maintain, or
participate in a combination or in the profits of a combination, he commits or
conspires to commit one or more of the following:
 
            (2) any felony gambling offense. 
 
            The City presented some evidence that Hamilton violated former TEX. PENAL CODE §
47.03 (1991) (gambling promotion) and former TEX. PENAL CODE § 47.05(a) (1991) (com-municating gambling information).
            Former Section 47.03(a)(1), (2), & (3) provided that:
            (a) A person commits an offense if he intentionally or knowingly does any of
the following acts:
 
            (1) operates or participates in the earnings of a gambling place;
            (2) engages in bookmaking; 
(3) for gain, becomes a custodian of anything of value bet or offered
to be bet. 
             
Former TEX. PENAL CODE § 47.01(2) (1991) defined a gambling place as:
[A]ny real estate, building, room, tent, vehicle, boat, or other property whatsoever,
one of the uses of which is the making or settling of bets, the receiving, holding,
recording, or forwarding of bets or offers to bet, or the conducting of a lottery or the
playing of gambling devices.
 
Former Section 47.03(b) defined bookmaking as:
            (1) the receiving and recording of or the forwarding of more than five bets or
offers to bet in one 24-hour period;
 
            (2) the receiving and recording of or the forwarding of bets or offers to bet
totalling more than $1,000 in one 24-hour period; or
 
            (3) a scheme by three or more persons to receive, record, or forward bets or
offers to bet. 
 
Former Section 47.05(a) provided:
            A person commits an offense if, with the intent to further gambling, he
knowingly communicates information as to bets, betting odds, or changes in betting
odds or he knowingly provides, installs, or maintains equipment for the transmission
or receipt of such information.
 
            The controlling questions are: has Hamilton met his burden of proof to show that there was
no substantial evidence to show that he engaged in organized criminal activity in violation of these
criminal statutes and in violation of the rules and regulations of the City and the fire department and,
if there was substantial evidence to support the trial board’s decision regarding the violations, did
Hamilton show that a reasonable person in the position of Acting Fire Chief Melton would not have
fired him for such activities, for insubordination, or for a combination of the activities and
insubordination?
            The record before the trial board showed that in 1990 Hamilton rented a tout line from James
Truesdale. A tout line is a telephone system that is used to convey predictions regarding the outcome
and the betting odds for various sporting events to those who call seeking such information.
Hamilton kept up with various sports, and he made predictions of the outcome of events which
involved those sports. He tape-recorded those predictions and put them, along with suggested
betting odds, on his tout line. If a person were interested in knowing the predictions and odds, that
person could dial Hamilton’s “900” tout line number and hear the recorded information. Truesdale
ran the same type of operation independent of Hamilton. Hamilton received $5.00 from the phone
company for each call made to his tout line.
            World Sportsbook was a legal bookmaking business located first in the Dominican Republic
and later in Jamaica. Richard Jones was the owner of World Sportsbook. Acknowledging that Jones
needed more business, Hamilton, Truesdale, and Jones met and agreed that Hamilton and Truesdale 
would advertise World Sportsbook on their tout lines and on telephonic score board services operated
by them. They also advertised their tout line services on their score board service lines. 
             Hamilton and Truesdale recorded the advertisement for World Sportsbook and placed it on
their tout lines and on their score board lines. The advertisement contained an “800” number that
potential bettors could call for information on World Sportsbook. Hamilton or Truesdale answered
the “800” number. Callers to the “800” number could also obtain information about the status of their
account with World Sportsbook. If a caller to the “800” number were interested, Hamilton and
Truesdale sent them an information packet regarding World Sportsbook. They enclosed a mail order
form addressed to Jones at his foreign office. Potential bettors used this form to establish an account
with World Sportsbook; the minimum deposit was $1,000. Hamilton and Truesdale set up a system
whereby a bettor’s deposit was insured by a third party. Although Hamilton testified that he never
handled money for actual bets or payoffs, he had picked up the money for bettors when they
established their accounts with World Sportsbook. Payoffs were made from bank accounts belonging
to Hamilton and Truesdale in the Dallas/Fort Worth area. Hamilton received a commission of 25
percent of the money won on bets made by those bettors whom he referred to World Sportsbook.
            Jeffrey L. Ramirez, an FBI agent, led the investigation of a “large-scale bookmaking operation
that was operating out of the Dominican Republic, Jamaica, and Texas.” Agent Ramirez testified that
there were approximately four or five people involved in the operation. Richard Jones was the
overseer of all operations in Jamaica. Hamilton and Truesdale were responsible for advertising and
getting bettors into the organization. Hamilton picked up and received Western Union wire transfers
in Dallas and forwarded them to Truesdale who deposited them into a bank account in Texas.
            Agent Ramirez further testified that authorities seized notebooks at Hamilton’s residence. The
notebooks contained bettor’s names, addresses, and bettor numbers. The notebooks had the words
“World Sportsbook” written on them. Agent Ramirez compared the bettor numbers shown in the
seized notebooks, the bettor numbers listed on the checks that were deposited into the bank, and the
bettor numbers that the authorities found at Jones’s house. All of the numbers matched. That
indicated to Agent Ramirez that the bettor numbers listed in Hamilton’s notebooks were for World
Sportsbook. Hamilton testified that the notebooks contained bettor names, addresses, numbers, and
bet amounts as well as other information not relating to World Sportsbook. Agent Ramirez testified
that the parties, operating together, had the intent to take bets from other individuals and to receive
profits from them.
            This evidence was sufficient for a reasonable person to reach the conclusion that Hamilton
was working in a combination to communicate gambling information and to promote gambling. The
combination included Hamilton, Truesdale, Jones, and others. Using his “900” number, Hamilton
gave information as to bets and betting odds and also explained how to establish an account with
World Sportsbook. Hamilton testified that the advertising led to people calling the information line
about World Sportsbook. Hamilton’s income was the commissions he received for sending bettors
to World Sportsbook. There was evidence that Hamilton received money from bettors to send to
World Sportsbook. The evidence of whether that was done as part of the agreement between the
parties or as a favor to bettors was contradictory. However, it is not disputed by Hamilton that he
picked up money for bettor’s accounts with the World Sportsbook. There is substantial evidence to
support the findings of the trial board regarding the gambling allegations, and Hamilton has not met
his burden to show otherwise. 
            Hamilton argues that there has already been a finding that he did not commit the violations 
alleged against him. He bases that argument on the opinion of the Fifth Circuit Court of Appeals in
United States v. Truesdale, supra. However, the court there held only that the evidence was not
sufficient to support the jury’s verdict beyond a reasonable doubt. Here, the burden upon review is
quite different. The trial board’s decision must be upheld if there is more than a scintilla of evidence
which supports the decision. It is presumed that there is, and it is up to Hamilton to show otherwise. 
Bustamante v. Bexar County Sheriff’s Civil Service Commission, supra. Hamilton did not meet that
burden.
            The district court erred when it overturned the trial board’s findings that Hamilton violated
the personnel rules and regulations of the City and of the fire department. The City’s second issue 
is sustained. 
            The City next challenges the trial board’s decision to reinstate Hamilton. The standard which
governs the review of disciplinary action is set forth in the City of Dallas Personnel Rules Section 34-40(m)(3) and provides that the trial board:
[S]hall sustain the disciplinary action if, after considering only the evidence relating
to the violation found to have been committed by the employee in the first phase of
the hearing and relating to the employee’s previous employment record with the city,
a reasonable person could have taken the same disciplinary action against the
employee. (Emphasis added) 
 
            If a reasonable person in Acting Fire Chief Melton’s position could have fired Hamilton
under the circumstances, then the trial board had no alternative but to sustain the disciplinary action. 
The City argues that there is no evidence to support the trial board’s decision to reinstate. 
            We think that the more appropriate question before the trial board was whether the City
established by a preponderance of the evidence as required by Section 34-40(m)(4) of the City’s
Personnel Rules that a reasonable person could have taken the same disciplinary action against
Hamilton. That appropriately places the burden of proof before the trial board. 
            However, in this case, the district court as a reviewing court may inquire only whether the
trial board’s decision, based upon the record before the trial board, was supported by substantial
evidence. In other words, was there substantial evidence before the trial board to support its finding
that a reasonable person could not have fired Hamilton? The trial board could make the decision it
made only if it made that finding. 
            We hold that the finding of the trial board is not supported by substantial evidence. The only
evidence we have been able to find in the record regarding what a reasonable person would do in
these circumstances comes from Acting Fire Chief Melton and Section Chief Carlin, both of whom
testified that the action taken against Hamilton was reasonable. There is no substantial evidence to
support the action of the district court, and the contrary proposition was conclusively established. 
The district court erred when it affirmed the trial board’s decision to reinstate Hamilton. The City’s
first issue is sustained.
            Since the decision to reinstate Hamilton was in error, Hamilton was not entitled to an award
of back pay and sick leave. Because our holding in the first two issues is dispositive of this appeal,
we need not address the remaining issues. TEX.R.APP.P. 47.1.
            We reverse the judgment of the district court. We render judgment upholding the trial
board’s decision regarding the violations it found against Hamilton. We render judgment upholding
Hamilton’s termination by Acting Fire Chief Melton. We also render judgment that Hamilton take
nothing from the City of Dallas.
 
                                                                                                JIM R. WRIGHT
                                                                                                JUSTICE
 
March 25, 2004 
Panel consists of: Arnot, C.J., and
Wright, J., and McCall, J.