W.L. DIXON and A.W. Witcher,
Appellants,

v.

David DEWHURST, Texas
Land Commissioner,
et al., Appellees.

No. 06–04–00079–CV.

Court of Appeals of Texas,
Texarkana.

Submitted June 16, 2005.

Decided Aug. 4, 2005.

Ben E. Jarvis, Newell S. Jarvis, Jarvis Law Firm, Tyler, for Appellants.

Dwight A. Brannon, Gilmer, Jeffee L. Martinez–Vargas, Austin, Thomas A. Zabel, Burns, Wooley, Marseglia & Zabel, LLP, Houston, for Appellees.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

A vacancy is "an area of unsurveyed public school land. . . ." TEX. NAT. RES.CODE ANN. § 51.172(5) (Vernon Supp.2004–2005); *see Cockerell v. Taylor County,* 814 S.W.2d 892, 894 n. 2 (Tex.App.-Eastland 1991, writ denied). A person discovering that a vacancy exists has the right, in certain circumstances, to lease or purchase the property at a price fixed by the proper state agency. W.L. Dixon and A.W. Witcher (collectively Dixon) claimed a vacancy existed concerning land in Upshur County and attempted to purchase or lease the alleged fifty-four-acre vacancy. Dixon later lowered the claim for vacant land to thirty-five acres, but eventually claimed that the vacancy had to be one of the two acreages.[1] The proceeding went to the General Land Office, which had a survey

---

1. Dixon first argues in his brief that the entire King survey is in the wrong place. That, however, was not part of this proceeding and is not before us in this appeal. We have been informed that a different vacancy proceeding raising that argument is presently pending in the Upshur County District Court, on appeal from the administrative proceeding.

made of the land, and concluded a vacancy existed. The case was tried before an administrative law judge, who determined that no vacancy existed, and that proposal was adopted by the Commissioner of the General Land Office. Dixon appealed to the district court, and that court affirmed the Commissioner's order. Dixon appeals.

In determining whether there was substantial evidence to conclude no vacancy existed, a primary issue is whether the administrative law judge could properly consider any evidence except the senior (William King) and junior (David Meredith) surveys in determining, on the ground, the location of the Meredith survey's south border in relation to the King survey. Dixon urges that a vacancy exists concerning property allegedly located south of the common boundary line of the S.W. Beasley and the Meredith surveys and north of the King survey. The Meredith survey did not call to adjoin the King survey. In fact, the Meredith survey did not even mention or acknowledge the King survey.

However, the Beasley survey and other evidence indicate that they do adjoin. If this evidence could not be considered, then there was no evidence before the Commissioner to support the ruling; if it could be considered, there is.

**Standard of Review**

Our review is extremely protective of the agency's decision and the trial court's review of that decision. The Act of May 28, 1993, 73rd Leg., R.S., ch. 991, § 1, 1973 Tex. Gen. Laws 4323 requires the trial court to review the Commissioner's ruling to see if it is supported by substantial evidence. Thus, we look to see if the trial

court correctly decided that such substantial evidence exists.[2]

The Administrative Procedure Act (APA) authorizes a reviewing court to test an agency's findings, inferences, conclusions, and decisions to determine whether they are reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole. Tex. Gov't Code Ann. § 2001.174(2)(E) (Vernon 2000). The cases applying that standard presume that the Board's order is supported by substantial evidence and that the plaintiff has the burden to overcome this presumption. *See Meier Infiniti Co. v. Motor Vehicle Bd.*, 918 S.W.2d 95, 98 (Tex.App.-Austin 1996, writ denied). Further, the evidence in the record may preponderate against the decision of the agency and nevertheless amount to substantial evidence. *Tex. Health Facilities Comm'n v. Charter Medical–Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex.1984); *Graff Chevrolet Co. v. Tex. Motor Vehicle Bd.*, 60 S.W.3d 154, 159 (Tex.App.-Austin 2001, pet. denied).

Substantial evidence is more than a scintilla and is enough relevant evidence that a reasonable mind could come to the same conclusion. *Firemen's and Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953 (Tex.1984). A reviewing court may not simply substitute its judgment for that of the administrative body. *City of Dallas v. Hamilton*, 132 S.W.3d 632, 637 (Tex.App.-Eastland 2004, pet. denied); *see Trapp v. Shell Oil Co.*, 145 Tex. 323, 198 S.W.2d 424, 436 (1946). An administrative order will not be set aside merely because evidence was conflicting or disputed or because the evidence did not compel the result reached by the agency. Substantial

---

**2.** The statute was rewritten effective September 1, 2001, to require a de novo review by the trial court. *See* Tex. Nat. Res.Code Ann. § 51.188(b) (Vernon Supp.2004–2005). The

administrative hearing in this case occurred in 1999, and the Commissioner's final order was signed April 26, 2000. The petition for judicial review was filed July 6, 2000.

evidence deals only with the reasonableness of the administrative order, not with its correctness; a reviewing court may not set aside the order simply because it would have reached a different conclusion. *Brinkmeyer*, 662 S.W.2d at 956. Thus, the true test is not whether the agency reached the correct conclusion—but whether some reasonable basis exists in the record for the agency's action. *City of El Paso v. Pub. Util. Comm'n of Tex.*, 883 S.W.2d 179 (Tex.1994).

**Issue**

Dixon argues that a portion of the land between the Meredith and the King surveys is vacant and unpatented, and presents the following arguments:

(1) the Meredith survey and the King survey are complete on their faces,

(2) Meredith, as the junior survey of the two, does not specifically say that it adjoins the King survey's north boundary,

(3) the corner monument of the Meredith survey could not be found,

(4) the distance measured on the Meredith survey's west boundary is not long enough from the set point to reach the north boundary of the King survey. Dixon's contention that he has proven the existence of the vacancy is necessarily based on his position that no other surveys or factors should be considered.

The conclusion that a vacancy exists comes from utilizing known starting points and then by following course and distance calls to the north boundary line of the King survey and the south boundary lines of the Meredith and Beasley surveys. When the boundary lines do not meet using those measurements, considering that evidence only, necessarily a portion of the land is vacant. In arriving at the conclusion that a vacancy exists, Dixon's survey ran out the boundary from known starting points. (The north boundary of the King survey was established from a known southeast corner of the King survey. The south boundary of the Meredith survey was established from the northwest corner of the John W. Rogers survey. The south boundary of the Beasley survey is located beginning from the Meredith survey's southwest corner, which was also established from the Rogers survey's northwest corner.) (See diagram.)

In the Beasley survey, which is junior to the King survey, several calls stated clearly that the Beasley and Meredith surveys adjoined the north boundary line of the King survey. (E.g., the southeast corner of the Beasley survey calls to be in the north boundary line of the King survey [see diagram label number 1], the southeast corner of the Beasley survey calls for the same trees as the southwest corner of the Meredith survey [number 2], the south boundary line of the Beasley survey calls to be in the north boundary line of the King, the southwest corner of the Beasley survey calls for the same trees as the southeast corner of the Manning survey [number 3], and the southeast corner of the Manning survey calls to be in north boundary line of the King survey [number 4].

**The Controlling Concept**

The ultimate function of these rules is to determine the true and correct location of the land. *Stafford v. King*, 30 Tex. 257, 272 (1867). Although a junior survey cannot be used to create an ambiguity in or change the location of a senior survey, *Kirby Lumber Corp. v. Lindsey*, 455 S.W.2d 733, 739 (Tex.1970), if the original boundaries in a senior survey have disappeared, recitals in a junior survey may be used to determine its location. *Hill v. Whiteside*, 749 S.W.2d 144, 152 (Tex.App.-Fort Worth 1988, writ denied). The purpose of the rule is to make a junior survey conform to the boundaries of an

adjoining senior survey and thus avoid a vacancy or conflict. We also note that, if, because of a lapse of time since the making of a senior survey, the original senior survey bounds have disappeared, recitals in the junior survey are the best evidence of the location of those senior survey boundaries. *Id.; see Waldrop v. Manning,* 507 S.W.2d 626, 630 (Tex.Civ.App.-Texarkana 1973), *writ ref'd n.r.e. per curiam, Manning v. King,* 514 S.W.2d 899 (Tex.1974). We also recognize that these concepts are by no means limited to purely the two surveys presently at issue—they extend to the other surveys surrounding them, each of which is junior or senior to its neighbor. *See Hill,* 749 S.W.2d at 152–53.

### Dixon's Surveyor:

Garey Gilley testified there is a vacancy because the Meredith survey does not call to adjoin to the north line of the King survey, because the original monument described as the corner for the Meredith survey could not be found, and because the measurement from the calculated northwest corner did not reach down to the north line of the King survey.[3]

### Defendants' Surveyor:

Darrell Shine testified there is no vacancy, based on his on-the-ground survey and his review of numerous written records, ranging from the various surveys to the Upshur County records and field books of Stanolind Oil dating from the 1930s and 1940s.

He agreed the original boundaries (monuments) have disappeared since the mid–1800s, and thus he used recitals in the Beasley survey to locate its common corner with the senior Meredith survey. Specifically, the southeast corner of the Beasley survey (which is junior to the Meredith survey) specified that its corner was identified by the same trees as those found on the southwest corner of the Meredith survey—and that they were located in the north boundary line of the King survey. Both the Beasley and Meredith surveys were done by surveyor J.M. Glasco.

Shine also relied on the Manning survey, which is senior to the Meredith survey (though junior to the King survey), and which placed its southeast corner on the King survey's north boundary line—and specified that this corner was at the same trees as the Beasley southwest corner.

The surveyor also located the Mann survey (which adjoins the east boundary of the King survey, and adjoins part of the south boundary of the Meredith survey) and noted that the field notes for the Mann survey placed the southeast corner of the Meredith survey due east of the northeast corner of the King survey, thus placing that corner in the south boundary line of the Meredith survey.

### Could the Commissioner look at anything more than the King and Meredith surveys?[4]

It is clear that the underlying purpose of retracing the original surveyor's footsteps is to determine that original surveyor's intent. *Strong v. Delhi–Taylor Oil Corp.,* 405 S.W.2d 351, 376 (Tex.Civ.App.-Corpus Christi 1966, writ ref'd n.r.e.). Where con-

---

3. Gilley wore two hats in this proceeding. He was Dixon's original surveyor, who formulated a fifty-four-acre vacancy in 1997, and then later was appointed as a representative of the State as a surveyor, and changed his survey to show a thirty-five-acre vacancy in 1999. In so doing, he changed the corners on which he relied.

4. Six different surveys were reconstructed and presented to the trial court:

| | |
|---|---|
| *William King Survey | May 10, 1838 |
| Joseph Manning Survey | December 29, 1849 |
| John Rogers Survey | August 31, 1850 |
| *David Meredith Survey | May 2, 1851 |
| Marshall Mann Survey | August 11, 1853 |
| S.W. Beasley Survey | January 24, 1871 |

flict exists, the concept of "dignity" of calls is used to show what calls will control. 31 Tex. Admin. Code § 7.5 (1976);[5] *Stafford,* 30 Tex. 257; *Cherokee Water Co. v. Freeman,* 145 S.W.3d 809, 814 n. 3 (Tex.App.-Texarkana 2004, pet. denied). Typically, to avoid the vacancy problem between two "adjoining" tracts of land, the survey will call to adjoin to the next survey. Also, it is clear that the oldest survey is given priority, with the newer ones subject to the older. Thus, as stated above, junior surveys cannot create ambiguity in the calls or change the location of a senior survey. *Lindsey,* 455 S.W.2d at 739; *Knupp v. Miller,* 858 S.W.2d 945, 949 (Tex. App.-Beaumont 1993, writ denied).

 In addition, the Meredith and Beasley surveys, both of which are just north of the King survey, were done by the same surveyor, and there is also authority holding that, where there is a conflict or uncertainty between two surveys made by the same surveyor, it is (1) appropriate to consider extrinsic evidence to resolve the conflict, *Taylor v. Higgins Oil & Fuel Co.,* 2 S.W.2d 288, 301 (Tex.Civ.App.-Beaumont 1928, no writ); and (2) calls in a junior survey can be considered in locating the boundaries of the senior when both were made by the same surveyor within a short period of time. *Magnolia Petroleum Co. v. Biel,* 285 S.W.2d 858, 864 (Tex.Civ. App.-San Antonio 1955, writ ref'd n.r.e.); *see Barnes v. Wingate,* 342 S.W.2d 352, 357 (Tex.Civ.App.-Beaumont 1960, writ dism'd). The administrative law judge also acknowledged the Meredith survey was completed by Glasco in 1851 and did not contain a call to adjoin the King survey, or even mention the King survey

whereas the Beasley survey was completed by Glasco in 1871 and contained three calls for the Beasley survey to adjoin the King survey. The administrative law judge recognized that Glasco had conducted several surveys in the area since 1851 and that it was reasonable to infer that, when Glasco surveyed the Beasley tract, he was more familiar with the area and the King survey.

The Commissioner also considered a number of other factors relevant and persuasive, such as the location of old fence lines on the supposed joint boundary that was detailed by Stanolind Oil survey crews in the 1930s and 1940s and which fence lines still exist today.

## Conclusions

 The Commissioner could, under the restrictions set out by the rules above, consider evidence other than that provided only by the King and Meredith surveys. The Beasley survey, as junior to the Meredith survey, could not be utilized to change the Meredith survey's lines. However, because the Beasley survey specifies that its southeast corner was memorialized by the same trees as was the southwest corner of Meredith, it could be considered to provide some evidence of where that memorialized corner was on the ground. Because the trees had disappeared over the last 150 years, the statement in the Beasley survey specifying that the trees were on the King survey's north boundary could also be considered as evidence. There was also evidence that an earlier—unpatented—survey sharing the same southwest corner with the Meredith survey identified the same trees and specifically did place them in the King boundary line.[6]

---

**5.** Dignity of Calls:
 1 Call for natural objects;
 2 Call for artificial or manmade monuments, adjoinders, and corners;
 3 Calls for course;

 4 Calls for distance; and
 5 Calls for quantity or acreage.
 31 Tex. Admin. Code § 7.5.

**6.** Joseph New survey.

■ There is also authority providing the use of extrinsic evidence when none of the original corners can be located on the ground because time has destroyed the evidence left by the original surveyor. *Taylor,* 2 S.W.2d at 300. In this case, even under Dixon's formulation, none of the original corners of the Meredith survey were located. Dixon's starting point lies in the northwest corner of the Rogers survey, calculates distance and course south and east to find a corner that was in common with the northeast corner of the Meredith survey.

The inconsistency is the shortfall in surveyor Gilley's measured line (1820 varas, as opposed to the 1925 varas required from the calculated Meredith survey corner to actually reach the north boundary of the King survey [at 33–1/3 inches per vara, that is about 291 feet off out of a total distance of 5,342 feet]). Although by twenty-first century standards such a distance is considerable, in a case contemporary with the surveys the Texas Supreme Court found that a descriptive call of 3,160 varas was a mistake, a true length of only 750 varas existed, that this was not highly exceptional, and discussed the reasons that distance measurements are of such low integrity. *See Stafford,* 30 Tex. at 275–76.

Under the substantial-evidence standard, it does not appear the trial court erred by concluding that the administrative decision was made with the support of applicable legal authority. Further, under the standards stated in this opinion, there was substantial evidence presented supporting the decision of the administrative body.

We affirm the judgment of the trial court.

**John W. Rogers**
Glasco (1855)

**Manning**
Glasco (1858)

**Beasley**
Glasco (1871)

**Meredith**
Glasco (1851)

④③ ②

①

**King**
Hooper (1838)

Chandler

**Mann**
Van Sickle (1853)

### Key

◇ = Known starting points

① = SE Corner Beasley – located in N boundary of King

② = SW Corner Meredith – same trees as SE corner Beasley

③ = SW Corner Beasley – same trees as SE corner Manning

④ = SE Corner Manning – located in N boundary of King

■■■ = Alleged Vacancy