Zelle WILLIAMS et al., Appellants,

v.

Art JAMES, Appellee.

No. 3613.

Court of Civil Appeals of Texas.

April 21, 1961.

Rehearing Denied May 26, 1961.

C. O. McMillan, Stephenville, for appellant.

Sam Russell, Ennis Favors, Stephenville, for appellee.

COLLINGS, Justice.

Zelle Williams, a widow, James Williams and LaRue Williams Oakes and her husband, J. T. Oakes, on September 30, 1959, brought suit against Art James in trespass to try title to a strip of land approximately 25 varas wide, lying north of the Stephenville lower Granberry Road, hereinafter referred to as the Road. Art James answered by general denial, a plea of not guilty and the ten year statute of limitation. The trial was before a jury which found that defendant Art James had had peaceable and adverse possession of the land in question for a period of more than ten years prior to the time his title was first questioned. Based upon the verdict, the court entered judgment denying plaintiffs any recovery and overruled their motions for judgment non obstante veredicto and for a new trial. Plaintiffs have appealed.

In appellants' first three points it is urged that there was no evidence to authorize the submission of the question of adverse possession to the jury, that the verdict·was not supported by any evidence, and that the court therefore erred in overruling their motions for a directed verdict and for judgment notwithstanding the verdict.

The land in controversy is a strip 25 varas wide out of the J. Y. Loflin Survey and lies between the J. T. Williams Survey and the Mackey Survey. It extends along the east line of the J. T. Williams Survey from the Road north approximately 197.5 varas to the northeast corner of said J. T. Williams Survey. The J. Y. Loflin Survey is a large tract of land, part of which lies north of the J. T. Williams and M. J. Mackey Surveys, and a part thereof lies south of such surveys, the two portions

being connected by a strip 25 varas wide running between said surveys. The portion of such strip lying north of the Road, which runs approximately east and west across the Williams and Mackey Surveys, is the land in controversy. Appellants introduced in evidence records and deeds showing a complete chain of title to the strip in them extending back to a patent from the State of Texas.

The Williams Survey of 160 acres was conveyed to appellee James by W. E. Miller and wife on June 10, 1946. James had no deed to any portion of the J. Y. Loflin Survey. Miller testified that during the time he owned the J. T. Williams Survey he put a two wire fence along the north side of the Road where such Road crossed the then unfenced and open strip of land lying just east of the land belonging to him. Miller testified that he erected the fence with the permission of Branch Williams and that it was agreed between them that if said Williams ever wanted the land the fence would be taken down. According to the testimony of Miller the fence erected by him extended east from the east line of his Williams Survey along the north line of the Road to the point where such Road intersects the west line of the M. J. Mackey Survey, and was there connected to a fence which ran north and south along the east side of the strip of land in controversy. On the north end of the questioned strip there was a fence running east and west which extended along the south line of the land in the Loflin Survey lying north of the J. T. Williams Survey. No fence was erected along the west line of the strip. After Miller extended his fence east along the north side of the Road and the south end of the disputed strip, there were fences on the north, south and east sides of the strip and it was fenced in with the land then owned by him and now belonging to Art James, that is, the J. T. Williams Survey.

Appellant James testified in his own behalf substantially to the effect that when he bought the land from W. E. Miller he looked at the place but did not go around the fence line; that Miller told him the fences were on the lines; that when he bought the land on June 10, 1946, he moved on it and had been living on it continuously since that time; that there was a fence between him and the Mackey Survey on the east and that the county commissioner had pushed out brush along the fence with a dozer blade so that he could repair it; that there was a fence along the north line of the J. T. Williams Survey which extended across the north end of the disputed strip, and a fence on the north side of the Road at the south end of the strip, and that the disputed land was fenced in with appellee's land. James testified that he claimed all the land within the fences at the time he bought the place from Miller in 1946 and moved on it, and has continuously claimed and used it since that time. He testified that he had been paying taxes on the land ever since he bought it. However, the tax collector testified to the effect that the records in his office show the taxes paid by James were on the land in the J. T. Williams Survey and that he did not pay taxes on any land in the J. Y. Loflin Survey. Appellee James testified that during all the time he had lived on and claimed the land in question he never heard of anybody claiming any part of it until a short time before this suit was brought. He testified that in 1951 or 1952 he repaired the fences on both the north and east sides of the land in controversy and that he and Branch Williams, who was during his life the husband of appellee Zelle Williams, worked together in repairing such fences; that Branch Williams did not make any claim to him that he and his family owned the strip. James further testified that since he bought and moved on the land he has been using it, grazing it, running cattle and goats on it, pushing the timber off the strip and repairing the fences around it with full knowledge on the part of Branch Williams. It is James' contention that these facts and circumstances show and constitute adverse holding, and notice to the world, including Branch Williams that he, James, was claiming, using and enjoying the same

from June 10, 1946, when he purchased the J. T. Williams Survey to September 30, 1959, when his claim to the land was first questioned, which covered a period of more than 13 years. James contends that such evidence shows adverse possession, and that the court did not err in overruling appellants' motion for an instructed verdict or their motion non obstante veredicto; that the evidence satisfies the law with reference to adverse and peaceable possession of land during a period of limitation sufficient to acquire title to the land in dispute.

Appellants contend that the evidence did not authorize the submission to the jury of the question of adverse possession. They contend the undisputed evidence shows that such possession as appellee James had originated with his grantor W. E. Miller; that Miller's possession of the land was with the permission of Branch Williams to fence the strip in controversy along the north side of the Road to tie onto a fence on the west line of the Mackey Survey; that possession was commenced in recognition of the title of the true owner and nothing was ever done by either Miller or appellee James to show that the relationship between either of them and the owner of the strip was ever repudiated or changed.

In our opinion appellants' contentions that the court erred in overruling their motions for directed verdict and for judgment non obstante veredicto are well taken. In Thompson v. Richardson, Tex. Com.App., 221 S.W. 952, 953, it is stated:

"Where possession is taken of the land of another, but, at the time such possession is taken, it is in recognition of the true title and the constructive possession of the title holder, the occupant is in possession in subjection to the recognized title. He cannot perfect a claim of title or defence under the statute as against the true owner, without bringing to his notice a repudiation of the recognition, and of the assertion of an adverse claim. The right to shield his possession under the statute, or to carve an estate, dates only from his repudiation."

The holdings in the following cases are in accord with the rule announced in Thompson v. Richardson. Pearson v. Doherty, 143 Tex. 64, 183 S.W.2d 453; Doherty v. Jensen, Tex.Civ.App., 174 S.W.2d 77; Allen v. Sharp, Tex.Civ.App., 233 S.W.2d 485; Mathews v. Thornell, Tex.Civ.App., 244 S.W.2d 574. It is held that when the original use of the land is permissive the presumption is that a continued use is also permissive in the absence of notice to the owner of a repudiation of the permissive use and assertion of an adverse claim. In St. John's Regular Baptist Ass'n v. Long, Tex.Civ.App., 211 S.W.2d 607, 610, (Ref. N.R.E.), it is stated:

"In order for appellee to sustain his plea under the ten-year statute of limitations, three facts must be established: (1) Mrs. Ella Campbell having succeeded to the possession held by L. L. Campbell, whose holding was not adverse to appellants, there must be repudiation of that possession and the claim of title adverse to appellants; (2) this repudiation and adverse claim must be clearly brought home to appellants for limitation begins to run only from that date; and (3) there must be adverse possession for ten years after notice of repudiation and adverse claim has been so brought home. Davis v. Lund, Tex. Com.App., 41 S.W.2d 57."

In 28 C.J.S. Easements § 14, p. 656 it is stated:

" * * * If a use begins as a permissive use it is presumed to continue as such, and in order to transform it into an adverse one there must be a distinct and positive assertion of a right hostile to the rights of the owner, and such assertion must be brought to the attention of the owner * * *; and the rule is not affected by the fact that the privilege is claimed by successors in interest of the party to whom the permissive use was originally given."

In the instant case the possession of appellee James of the strip in question is a continuation of that of his grantor Miller. It is undisputed that Miller's possession was permissive, in that, it originated by Miller securing permission from Branch Williams to extend his fence along the south end of the strip. There is no evidence that Miller ever made any adverse claim thereto, or brought any notice thereof to the owner of the strip. In order for appellee James to prevail it was, therefore, necessary for him, as successor to the possession of Miller, to show a repudiation of Miller's permissive possession and a claim of title adverse to Branch Williams or to appellants, clearly brought to the owner's attention more than ten years before the bringing of this suit. The evidence relied upon by James to show such repudiation and that his claim was adverse and "clearly brought home" to Branch Williams and appellants, was the testimony of James himself that in 1951 or 1952 he and Branch Williams together built or repaired a fence across the north side of appellee's land and across the north end of the disputed strip, each paying his proportionate share of the cost of rebuilding the fence. Appellee asserts that Branch Williams then and there knew that they were fencing the strip claimed by appellee; that Williams knew appellee had moved into the community and bought the place from Miller and made no claim to appellee that he owned the land. Appellee insists that these facts and circumstances constitute some evidence that Branch Williams, the then owner of the strip, had knowledge or notice that appellee's possession was adverse.

Assuming that James' testimony to the effect that Branch Williams helped him repair the fence across the north end of the disputed strip in 1951 or 1952 does constitute some evidence of a repudiation by James of Miller's permissive possession and that Branch Williams thereby acquired knowledge and was required to take notice of the fact that James' possession was adverse, appellee has still failed to meet the burden of showing adverse possession for ten years after notice of repudiation and adverse claim had been brought home to Branch Williams. The period from 1951 or 1952 until September 30, 1959, when this suit was brought, is less than ten years and, therefore, does not comply with the requirements of the ten year statute of limitation.

For the reasons stated the judgment of the trial court is reversed and judgment is here rendered for appellants.