IN THE

TENTH COURT OF APPEALS

 




 
 
 
 
 
 
 


 

 



No. 10-06-00312-CV

 

In re
Fleetwood Homes of Texas, L.P., 

and
Fleetwood Enterprises, Inc.

 

 



Original Proceeding

 



MEMORANDUM  DISSENTING Opinion










 

I will let the parties present their request for
mandamus relief to the Supreme Court without the delay caused by drafting a
lengthy dissenting opinion to the majority of this Court’s denial of the
petition for writ of mandamus.  I will note, however, that the refusal to
compel the referral of this matter to arbitration is consistent with the
majority of this Court’s past hostility to the arbitration process and is, I
believe, inconsistent with the law applicable to the facts of this case.  In
re Olshan Found. Repair Co. of Dallas, LLC, 192 S.W.3d 922 (Tex. App.—Waco
2006, orig. proceeding); In re McKinney, No. 10-03-00398-CV, 2004 Tex.
App. LEXIS 5667 (Tex. App.—Waco June 23, 2004, orig. proceeding), mandamus
granted, 167 S.W.3d 833 (Tex. 2005); In re Reliastar Life Ins. Co., Inc.,
No. 10-03-00185-CV, 2004 Tex. App. LEXIS 5130 (Tex. App.—Waco June 9, 2004,
orig. proceeding); In re Redman Homes, Inc., 134 S.W.3d 296 (Tex.
App.—Waco 2003, orig. proceeding); Bruce Terminix Co. v. Carroll, 953
S.W.2d 537 (Tex. App.—Waco 1997, orig. proceeding), mandamus granted,
988 S.W.2d 702 (Tex. 1998).

 

                                                          TOM
GRAY

                                                          Chief
Justice

 

Dissenting
opinion delivered and filed October 25, 2006






center'>Trial Court No. 97-01-15,275-CV

 



MEMORANDUM  Opinion



 








            Milton Baughn, Letyr Baughn, Tom Baughn,
and Amy Hetrick[1]
(the “Baughns”) sued Curtis Capps for trespass to try title, seeking to quiet
title to a four-acre tract of land.[2] 
Capps counterclaimed for adverse possession.  A jury found in Capps’s favor.  On
appeal, the Baughns challenge the: (1) admission of Capps’s title documents; (2)
attorney’s fee award; (3) legal and factual sufficiency of the evidence to
support adverse possession; and (4) the jury’s finding that their survey is not
substantially correct.[3] 
In two cross-issues, Capps challenges: (1) the admission of the Baughns’s deed
evidence; and (2) the trial court’s finding that the Baughns had any title to
the tract.  We modify the judgment and affirm the judgment as modified.

TITLE DOCUMENTS

In issue one, the Baughns argue that
Capps’s title documents were inadmissible under Rules of Civil Procedure 791
and 792.

After an answer is filed, either party
may serve the other with a written demand for an abstract.  See Tex. R. Civ. P. 791.  The abstract must be filed within
thirty days of service, unless the trial court grants an extension for good
cause shown; otherwise, the trial court may prohibit the party from offering documentary
evidence of title.  See Tex. R.
Civ. P. 792; see also Hunt v. Heaton, 643 S.W.2d 677, 678
(Tex. 1982).

             In a request for
production, the Baughns sought a “copy of [Capps’s] alleged abstract of title
for the property that is the subject of this suit.”  Capps responded, “[N]o
abstract has been prepared.”  About six days before trial, Capps filed a notice
of filing of certified documents.  The Baughns moved to exclude Capps’s title
documents, arguing that Capps failed to respond to their demand for an
abstract.  The trial court denied the motion, but granted the Baughns’s running
objection at trial.

Capps argues that a request for
production is not a demand for an abstract.  The Baughns argue that “request”
includes a “demand,” and vice-versa, and a contrary finding favors “verbal
gamesmanship over ‘a just, fair, equitable, and impartial adjudication of
[substantive] rights.’”  See Tex.
R. Civ. P. 1.

            Rules 791 and 792 give a
party the right to demand creation of an abstract, but Rule 192 requires a
party to produce documents
within the party’s “possession, custody, or control.”  Tex. R. Civ. P.
192.3(b).  A request for production is not intended to seek documents that do
not already exist.  See Tex. R. Civ. P. 192.7(b) (“Possession, custody, or
control…means that the person either has physical possession of the item or
has a right to possession of the item…”); see
also In re Guzman, 19 S.W.3d 522, 525 (Tex. App.—Corpus
Christi 2000, orig. proceeding) (“The
rules do not permit the trial court to force a party to create documents which
do not exist, solely to comply with a request for production.”).  The Baughns’s request for production,
which does not even mention Rule 791, is not the proper vehicle for demanding
an abstract.  A contrary conclusion would violate the rules governing the scope
of discovery.  See Tex. R. Civ.
P. 192.3(b); see
also Tex. R. Civ. P.
192.7(b).

Because Capps was not required to comply
with Rule 791, the trial court did not abuse its discretion by admitting
evidence of Capps’s title.  We
overrule issue one.[4]    

ATTORNEY’S FEES

            In issue two, the Baughns argue that Martin v. Amerman, 133 S.W.3d 262 (Tex. 2004) bars the jury’s award of attorney’s fees to
Capps.

            Under Martin, the
trespass-to-try-title statute governs cases involving title disputes and
attorney’s fees cannot be recovered under the Declaratory Judgments Act.[5] 
See Martin, 133 S.W.3d at 263, 267.  Because the
trespass-to-try-title statute governs the title dispute in this case, Capps
cannot recover attorney’s fees under the Declaratory Judgments Act.  See id; see also Aguillera v. John G. & Marie Stella
Kenedy Mem’l Found., 162 S.W.3d 689, 697-98 (Tex. App.—Corpus Christi
2005, pet. denied).

Capps argues that the award should be
(1) upheld under equitable principals; or (2) remanded for a determination of
whether fees are justified on equitable grounds.[6] 
See Baja Energy, Inc. v. Ball, 669 S.W.2d 836, 838-39 (Tex.
App.—Eastland 1984, no writ)
(A party may recover attorney’s fees where “required to prosecute or defend the
previous suit as a consequence of the ‘wrongful act’ of the defendant.”).  Capps
does not point to any place in the record where this claim was presented to the
trial court.[7] 
See Tex. R. App. P.
33.1(a).  We sustain issue two.

LEGAL AND FACTUAL SUFFICIENCY

In issues three and four, the Baughns challenge
the legal and factual sufficiency of the evidence to support (1) the jury’s
adverse possession finding; and (2) the jury’s finding that the survey prepared
by Billy Kling is not substantially correct.

Standards of Review

Under legal
sufficiency review, we ask “whether the evidence at trial would enable
reasonable and fair-minded people to reach the verdict under review” and credit
favorable evidence if reasonable jurors could, and disregard contrary evidence
unless reasonable jurors could not.  City of Keller v. Wilson, 168
S.W.3d 802, 827 (Tex. 2005).

Under factual sufficiency review of
issues where the appellant did not bear the burden of proof, we “consider and
weigh all of the evidence” and reverse only if the verdict is “so contrary to
the overwhelming weight of the evidence that the verdict is clearly wrong and
unjust.”  Checker Bag
Co. v. Washington, 27
S.W.3d 625, 633 (Tex. App.—Waco 2000, pet. denied).  On issues where the appellant bears the
burden of proof, we reverse only if, “considering all the evidence, the finding
is so contrary to the great weight and preponderance of the evidence as to be
manifestly unjust.”  Id.

Adverse Possession

            Adverse possession constitutes “actual
and visible appropriation of real property, commenced and continued under
a claim of right that is inconsistent with and is hostile to the claim of
another person.”  Tex. Civ. Prac. & Rem. Code Ann. § 16.021(1) (Vernon 2002).  Under the five-year statute, the
claimant must have held property in peaceable and adverse possession by: (1)
cultivating, using, or enjoying the property; (2) paying applicable taxes on
the property; and (3) claiming the property under a duly registered deed.  Tex. Civ. Prac.
& Rem. Code Ann. §
16.025(a)(1)-(3) (Vernon 2002).  The Baughns present five reasons supporting
their contention that Capps failed to establish adverse possession.

First, the Baughns contend that Capps’s
use of the tract was permissive.  The test for hostility is whether the acts
performed by the claimant on the land and the use made of the land were of such
a nature and character as to reasonably notify the true owner of the land that
a hostile claim was being asserted to the property.  Bernal v. Chavez, 198 S.W.3d 15, 19 (Tex. App.—El Paso
2006, no pet.).  “[T]here
must be an intention to claim property as one’s own to the exclusion of all
others; ‘[m]ere occupancy of land without any intention to appropriate it will
not support the statute of limitations.’”  Tran v. Macha,
213 S.W.3d 913, 915 (Tex. 2006).  Where the original use of the land in controversy is
permissive, it is presumed that the continued use thereof is also permissive in
the absence of notice to the true owner of the repudiation of such permissive
use and the assertion of an adverse claim.  Commander v. Winkler, 67 S.W.3d 265, 270 (Tex. App.—Tyler 2001, pet. denied). “[R]epudiation must be plain, positive,
and clear-cut” or the “permissive occupant” is “estopped
from denying the title of the owner.”  Id.  “[N]otice can be inferred,
or there can be constructive notice.” 
Natural Gas Pipeline Co. of Am. v. Pool, 124 S.W.3d 188, 194 (Tex.
2003).

In 1947, Milton purchased the four-acre
tract from Stella Davison.  Amy testified that Davison, her great-aunt, had
owned the tract since 1913 and sold gravel from the tract.  Milton testified
that the tract was fenced and Davison showed him the physical location of the
tract.  Amy testified that the fence extended a long way unbroken.  John
Hetrick, Amy’s husband, testified that Letyr showed him the tract and it was
fenced.  

Over the years, Milton leased 200 acres,
including the disputed tract, to various lessees.  He testified that anyone
could use the tract and no one used it without permission.  Knox Tidwell
received Milton’s permission to use the tract and agreed to maintain the fence. 
Milton never withdrew permission.  Amy testified that her family never abandoned
their interest in the tract.

In 1979, three of Knox’s children deeded
the tract to Don Dillon.  Dillon later deeded the tract to Capps.  Amy testified
that Capps never approached the Baughns claiming title to the tract.  Milton
testified that he never gave Capps permission to use the tract, Capps never
claimed the tract as his own, and he had no knowledge of Capps’s use.  Capps testified
that he never sought permission to use the tract.

            Because the Tidwells had permission
to use the tract and because Capps’s title derives from the Tidwells, the
Baughns argue that Capps’s use of the tract is permissive and has never been
repudiated.[8] 
Capps responds that he never received the Baughns’s permission to use the tract;
thus, his use is not permissive.

Permissive use is “not affected by the
fact that the privilege is claimed by successors in interest of the party to whom the permissive use was
originally given.”  Williams
v. James, 346 S.W.2d
617, 619 (Tex. Civ. App.—Eastland 1961, writ ref’d n.r.e.).  It is irrelevant that Capps never
received direct permission from the Baughns.

Nevertheless, the record evidences constructive
notice of repudiation.[9] 
Capps testified that, in the fall of 1991, he cleared the tract, enclosed it
with a fence, placed horses and donkeys on the tract, and obtained a permit to bore
under the road to provide water for the animals.  He left some trees on the
tract to provide shade.  The fence matched that surrounding his property
located across the road from the tract.

Milton testified that he leased the
tract to Claude Henry, Robert Henry, and Steve Vogelsang, but neither he nor
his lessees ever used the tract.  He also testified that he entered an oil and
gas lease that covered the tract.  John Hetrick explained that the Baughns
never used the tract for any other purpose except to lease it.  Edward Tidwell,
Knox’s son, testified that the Tidwells never put a horse or cattle on the
tract.  Other than repairing the fence, he did nothing to the tract.  His
family did not need to use the tract.  Edward testified that the tract did not appear
to be used and he never saw anyone using the tract, including the Baughns.  Capps
testified that Don Dillon never used the tract and he did not believe that any
of the Baughns’s lessees had ever used the tract.  Walter Nunn and Danny Tarver
testified that the tract was covered in yaupon and brush before being cleared. 
Amy testified that, had Capps not cleared the tract, it would have been covered
in trees like the surrounding property.  She admitted that Capps had performed
acts of ownership.  In fact, John explained that when Robert Henry notified the
Baughns about the clearing of the tract, Robert thought the tract had been sold. 


The Baughns had notice of a change in
the condition of the tract inconsistent with the use to which it had been put
in the previous years.  This is sufficient notice of repudiation of any
permissive use.  See Tex-Wis
Co. v. Johnson, 534 S.W.2d
895, 901 (Tex. 1976) (“[A]
change in the use or character of possession of the land is sufficient to
support a finding of notice of repudiation”); see also Witcher v. Bennett, 120 S.W.3d 922,
925 (Tex. App.—Texarkana 2003, pet. denied) (“Constructive notice can be
established by…change
in the use or character of possession of the
land.”).

Second, the Baughns contend that Capps
cannot establish wholly exclusive possession because, during his use of the
tract, the tract was under lease, the Tidwells were authorized to use the
tract, and the tract was part of an oil and gas lease.

            Exclusive possession of the
land is required to support an adverse possession claim; the adverse possession
claimant must wholly exclude the owner of the property.  Turner v. Mullins, 162 S.W.3d 356, 367 (Tex. App.—Fort
Worth 2005, no pet.).  Joint
or common possession by the adverse possession claimant and the owner defeats
the requisite quality of exclusiveness. 
Id.

In Solis v. La Brisa Land & Cattle Co., 361 S.W.2d 631 (Tex. Civ.
App.—San Antonio 1962, no writ), Solis could not establish exclusive possession
because La Brisa
“exercised certain undisputed acts of ownership over the property in which
Solis acquiesced and made no protest.”  Solis,
361 S.W.2d at 632.  La
Brisa granted and recorded three rights-of-way to oil and gas companies, after
which the “grantees entered, cleared the land, erected cattle guards through
fences, installed pipe lines, maintained right-of-ways, and caused damages
which Solis acknowledged.”  Id.  La Brisa also leased the property to a
tenant who resided on the property.  See id.

Unlike Solis, the record in this
case does not establish sharing of the tract by the Baughns/lessees and Capps. 
See id.; see also Tran, 213 S.W.3d at 915 (“Haliburton shared use of the strip
with the Buddes, so her use was not inconsistent with or hostile to their
ownership.”).  The record shows that neither the
Baughns nor their lessees entered the tract.  Rather, the evidence establishes Capps’s
actual use and possession of the tract, such as clearing and fencing the tract,
installing a water source, and grazing animals.  See McDonnold v. Weinacht, 465 S.W.2d 136, 142 (Tex.
1971) (A showing of grazing and a sufficient enclosure will support an adverse
possession claim); see also Shouse v. Roberts, 737 S.W.2d 354, 357 (Tex. App.—Houston
[14th Dist.] 1987, writ ref’d n.r.e.); Kinder Morgan N. Tex. Pipeline, L.P. v.
Justiss, 202 S.W.3d
427, 439-40 (Tex. App.—Texarkana 2006, no pet.).  We cannot say that there existed any
joint or common use of the tract as to defeat a finding of exclusive
possession.

Third, the Baughns argue that Capps
provided “[v]ague, indefinite, and unbelievable evidence support[ing] ‘the
date’ when [he] allegedly cleared and fenced the land in dispute.”  An adverse
possession claimant must show possession that is “continuous and is not
interrupted by an adverse suit to recover the property.”  Tex.
Civ. Prac. & Rem. Code Ann. § 16.021(3).

Milton testified that the tract was not cleared
and fenced until July 4 or Labor Day 1992.  Amy and John testified that they
observed the tract in January 1992 and it was not cleared.  According to John,
the tract was heavily wooded and he observed survey stakes and a deteriorating
fence.  Capps testified that he cleared, fenced, and used the tract in fall 1991. 
Tarver testified that he noticed improvements to the tract in either 1989 or
1990 and later noticed animals on the tract.  Nunn testified that the tract was
cleared in either summer or fall 1991.  Both Tarver and Nunn noticed animals on
the tract, water for the animals, and a fence surrounding the tract that
matched the fence surrounding Capps’s other property.  Suit was filed in
January 1997.

In light of this testimony, there is conflicting
evidence regarding the date when Capps’s possession commenced.  The jury, as
trier of fact, bore the burden of resolving the conflicts in this evidence.  See
City of Keller, 168 S.W.3d at 819-20;
see also Khorshid,
Inc. v. Christian, 257
S.W.3d 748, 758 (Tex. App.—Dallas 2008, no pet.).  In doing so, the jury was free to accept Capps’s
testimony that his term of adverse possession began in 1991, thereby establishing
peaceable possession for a period of five years.  See City of Keller, 168 S.W.3d at 822; see
also Tex. Dep’t of
Assistive & Rehabilitative Servs. v. Howard, 182 S.W.3d 393, 407 (Tex.
App.—Austin 2005, pet. denied).

Fourth, the Baughns contend that Capps
cannot claim the tract under a duly registered deed because he procured
his deed via fraud.[10]

The Federal Land Bank of Houston
conveyed 203 acres to K.E. Tidwell.  Years later, Edward Tidwell and his
siblings conveyed 198 acres to Dillon, trustee.  Capps, who operated a title
company, notarized the deed.  Dillon later conveyed the tract to himself.  The
deed of trust described 198 acres, but the deed described 202 acres.  Capps
notarized both documents.  In 1982, Dillon conveyed a 5/6 interest in the four-acre
tract to Capps and conveyed the entire interest in June 1991.

Donald Garrett, a surveyor and engineer,
testified that the Tidwells’ deed does not include the tract; thus, they did
not own it and could not sell it.  Edward testified that Knox never claimed to
own the tract and told Edward that “Pete Baughn” owned the tract.  He testified
that when he and his siblings sold property to Dillon, they sold 198 acres and did
not intend to convey the tract, but only that property owned by Knox, which did
not include the tract.

“[I]t is not necessary that the deed,
under which the claim is made, convey any title.”  Roseborough v. Cook, 108
Tex. 364, 194 S.W. 131, 131-32 (1917).  The
grantor may be wholly barren of any vestige of title; the deed may, therefore, pass
no semblance of title; yet, if it describes and purports to convey the land and
tested by itself is upon its face a good deed, it meets the requirement.  Id.  In West End API, Ltd. v. Rothpletz, 732 S.W.2d 371 (Tex. App.—Dallas 1987,
writ ref’d n.r.e.), the Dallas Court held:

Although the deed may have attempted to convey a
greater interest than Jayson actually owned, the defect, if any, was not
apparent from the face of the instrument.  Thus, recording of the deed was sufficient
to satisfy the third requirement of the test.      

 

Rothpletz, 732 S.W.2d at 375.

Even
if the deed to Capps conveyed a greater interest than that owned by the grantor,
such an error is not apparent from the face of the deed.  Capps’s deed, while insufficient
to establish title, is sufficient to satisfy element three of the five-year
statute.  See Roseborough, 194 S.W. at 131-32; see also Rothpletz, 732 S.W.2d at 375; Chamberlain v.
Showalter, 23 S.W. 1017, 1019 (Tex. Civ. App.—San Antonio 1893, no writ) (Although
deed procured by forgery was “inadmissible
as a muniment of title, [it] would have been admissible for the purpose of a
deed in connection with the five years statute”).

Finally, the Baughns contend that Capps
failed to establish payment of taxes.  An adverse possession claimant
must show “consecutive payment of taxes.”  Mem’l Park Med. Ctr., Inc. v. River Bend Dev. Group, L.P., 264 S.W.3d 810, 818 (Tex.
App.—Eastland 2008, no pet.).
 Payment may be established “by receipt issued by tax collector, the record of
taxes collected kept in the office of the tax collector, or by direct or
circumstantial evidence.”  Holasek
v. Janek, 244 S.W. 285,
286 (Tex. Civ. App.—Dallas 1922, no writ).  Payment need not “be established by any
particular form of evidence to an absolute certainty, but only to a reasonable certainty
like any other ordinary fact in dispute and required to be established in the
course of a judicial investigation.”  Id.

Milton testified that he paid taxes on
the tract and that Amy and Tom paid the taxes after he conveyed the tract to
them.  Amy testified that her family has paid taxes on the tract since 1913 when
Davison owned the tract.  John testified that Amy and Tom paid taxes on a total
of 37.96 acres or three separate tracts of land, including the disputed tract. 
The Baughns produced tax receipts showing that they paid taxes on large pieces
of property, which they alleged to include the disputed tract.  Capps testified
that he has paid taxes on the tract since 1982.  An aerial tax map from the
appraisal district identifies Capps as the owner of a small tract across the
street from the property where he resides.  Capps testified that this is the
same tract that he has fenced.  He further testified that tax records show that
he owns the tract.

The Baughns maintain that the evidence
shows that they, not Capps, paid taxes.  However, the evidence shows that Milton
and Letyr paid taxes on approximately 200 acres and that Tom and Amy paid taxes
on approximately 37 acres.  Although they testified that this acreage includes
the disputed tract, such evidence is insufficient.  See Welch v. Mathews, 642 S.W.2d 829, 832 (Tex. App.—Tyler
1982, no writ).  Capps’s
testimony that he paid taxes on the disputed tract, supported by the tax map, is
sufficient to support payment of taxes.[11] 
See McDonough v.
Jefferson County, 79
Tex. 535, 15 S.W. 490, 491 (1891) (“There
was no error committed in permitting the payment of taxes to be proved by
oral evidence over the objection that the tax receipts or record evidence
should be produced, nor over the objection that the evidence was general and
did not show the amount paid for any particular year.”); see also Holasek, 244 S.W. at 286.

In summary, the evidence is legally and
factually sufficient to support the jury’s finding that Capps adversely
possessed the disputed tract continuously for five years.  See Tex. Civ. Prac.
& Rem. Code Ann. §
16.025(a)(1)-(3); see also City of Keller, 168 S.W.3d at 827; Checker
Bag, 27 S.W.3d at 633.  We overrule issue three.

Survey

            That a survey must be substantially
correct “does not mean that it must be absolutely correct, nor does it mean one
that is merely sufficient to call the matter to the attention of the court will
suffice.”  Aransas
County Navigation Dist. No. 1 v. Johnson, No. 13-05-00563-CV, 2008 Tex. App. LEXIS 3153, at *27-28
(Tex. App.—Corpus Christi Apr. 29, 2008, pet. denied) (mem. op.).  “It means one that in substance and in
the main is correct, and that is not affirmatively incorrect.”  Id.[12]

The Baughns argue that they proved, as a
matter of law, that the survey prepared by their surveyor Billy Kling is
substantially correct.  They further contend that the jury’s
contrary finding conflicts with its finding that the survey is “located in
whole or in part in the tract claimed by the [Baughns] and [Capps] under the
3.66 acre deed;” i.e., the correction deed from Milton to Amy and Tom.  Donald
Garrett formulated the description in the correction deed.

The deeds in the Baughns’s chain of
title contain different dimensions for the disputed tract.  The dimensions in an
1881 deed are 150 by 150 varas.  The dimensions in the deed to Davison are 155
by 145 by 155 by 145 varas.

Kling acknowledged the “variances” in
the Baughns’s chain of title.  He found the 1881 deed contained the best
description of the tract.  All of the deeds described the tract as beginning “near
the town of Sutton” and located from the center line of the railroad.  Kling
testified that Sutton is five or six miles south of Hearne, “[g]enerally, at
the intersection of Arrowmoon farm-to-market road and Highway 6 or railroad.” 
An ownership map revealed one four-acre tract in the “vicinity of Sutton.”

Kling also discovered a “2 by 3 box
culvert,” which he determined to be the “rock culvert” described in the deeds. 
This culvert served as the “nucleus” of his starting point.  He also located a
cross-tie, which appeared to be an old fence post, near the northeast corner of
the tract.  The deeds refer to fence corners.  The cross-tie is outside Capps’s
fence and is about 2.2 feet outside the box of the tract.  Finally, he used the
railroad to identify the tract because the deeds placed the tract either
perpendicular or parallel to the railroad.

After reviewing the 1881 deed and adjoining
deeds and honoring the calls from those deeds, Kling concluded that the best
location of the tract could be determined by using the reference in the Tidwell
deed.  He located the tract by using the 1881 deed, but changed its location by
using the Tidwell deed.  He did not use the 150 by 150 varas description.  He
was willing to listen to anyone with a “better way of doing it.”

Kling admitted that a significant part
of his description is located in Capps’s description.  He agreed that the
ownership map shows the Baughn property “4 acres off of the road, north up the
track.”  He admitted that his description does not conform to Garrett’s, but a
“substantial part” of Garrett’s survey represents the tract conveyed to Milton. 
He testified, “My professional opinion is that 4 acres that’s delineated on
that bottom map down there is the best I know how to do to locate that 4
acres.”

Kling explained that he is required to
“make an evaluation as to the intent of the parties” and find “the best
evidence of that intent.”  He made his best effort to resolve problems in the
deeds by doing “[w]hat I believe was the intent of the people involved in the
property.”  When asked if he located the tract in the Baughn deed, Kling
stated, “I don’t know that I’m ever satisfied with much of my work.  I did the
best I could.”  He stated that his description is the “best location of the
intent of the people and what has occurred over the last 75 years out there.” 
Kling opined that he had located the tract with “reasonable certainty,” and
that his survey is “substantially correct.”

Garrett testified to reviewing deeds in
the chain of title and surrounding deeds to determine the location of tract.  He
explained that “near the town of Sutton” is impossible to locate.  Yet, he
could locate Sutton on a map and identify the one 4-acre tract denoted on the
map and admitted that Love Abstract maps showed the tract in a different location
than that described in his survey.

Garrett testified that his description
does not reflect a curvature in the tract, but the deeds in the Baughns’s chain
of title do not contain a curvature.  Garrett admitted that his description is
the same as that described in Capps’s deed, but that Capps’s deed was executed
by grantors who did not own the tract.  According to Garrett, the Tidwell deed
specifically excludes the tract because the deed describes “going down the
railroad and around the 4-acre tract to the county road.”  When Dillon bought
the tract, “they just went straight on past the corner of the four acres and it
includes the four acres in the deed.”  He testified that the Love Abstract maps
placed the tract in a different location, north of the road, but explained that
this is irrelevant because Tidwell could not convey the four acres to Dillon.

Garrett further admitted that his
description overlaps Kling’s.  However, he explained that Kling’s description
excluded a piece of property that the Baughns had adversely possessed.  When
asked whether the 150 by 150 varas description should have been used, Garrett
responded, “Not necessarily” because of adverse possession.  Garrett opined
that, if Kling was “trying to show what the deed said the property is,” then he
“might not have been surveying the whole property;” Kling “might have been
showing what the deed describes, which is not necessarily what the property
is.”  Garrett testified that the correction deed is the best description of the
Baughn tract.

The Baughns argue that Kling’s survey is
substantially correct because Kling attempted to follow in the footsteps of the
original surveyor by locating objects described in the deeds and honoring calls
in the deeds.  See TH
Invs., Inc. v. Kirby Inland Marine, L.P., 218 S.W.3d 173, 204 (Tex. App.—Houston [14th Dist.] 2007,
pet. denied) (When finding
the lines of a survey,
“[t]he cardinal rule is that the footsteps of the original surveyor, if they can be ascertained,
should be followed.”).

The jury, however, was faced with two different
descriptions of the tract from two different surveyors.  Kling considered the
applicable deeds and identifying objects in the deeds, but ultimately concluded
that his description, which did not follow the dimensions in the deed he
believed to contain the best description of the tract, was accurate because of
what he believed to be the parties’ intent.  Yet, the “underlying purpose of retracing the
original surveyor’s
footsteps is to determine that original surveyor's intent.”  Dixon v. Dewhurst,
169 S.W.3d 515, 519 (Tex. App.—Texarkana 2005, no pet.) (emphasis added).  “[J]unior surveys cannot create ambiguity in the calls or
change the location of a senior survey.”  Id. at 520.

Additionally, both surveyors testified that
their descriptions differ and explained the differences between their
findings.  Both surveyors testified that their respective descriptions
accurately depict the location of the tract.  This testimony left the jury with
the responsibility of determining whether Kling’s survey was substantially
correct in light of a competing survey.  As trier of fact, the jury was
entitled to reject Kling’s testimony.  See City of Keller, 168 S.W.3d at 819; see
also Aransas, 2008 Tex. App. LEXIS 3153, at *22-23 (Declining
to disregard jury’s conclusion that survey was substantially correct); Khorshid,
257 S.W.3d at 758; Howard, 182 S.W.3d at 407.  The jury could reasonably conclude
that Kling’s survey was not substantially correct.  See Fears v. Texas Bank, 247 S.W.3d 729, 737 (Tex.
App.—Texarkana 2008, pet. denied) (Record did not show that surveyor could locate the twenty-acre tract with “reasonable
certainty based on the data contained in the deed or any other writing;” “In
order to establish the precise location of the twenty acres, one must engage in
inference and conjecture to determine its boundaries.”).

 Because
the surveys overlap, the jury could also reasonably conclude that Kling’s
survey, although not substantially correct, is located in whole or in part in
the tract described by Garrett in the correction deed.  This is especially true
given Garrett’s testimony that Kling excluded a portion of the tract and that
Kling may not have surveyed the whole property.  Thus, we cannot say that the
jury’s findings conflict.  See Bender v. S. Pacific Transp. Co., 600
S.W.2d 257, 260 (Tex. 1980)
(“A court may not strike down jury answers on the ground of conflict if there
is any reasonable basis upon which they can be reconciled;” “the question is
whether there is any reasonably possible basis upon which they may be
reconciled.”).  We overrule issue four.

CONCLUSION

Having found that Capps is not entitled
to attorney’s fees under the Declaratory Judgments Act, we modify the judgment
to delete the award of attorney’s fees.  Having affirmed the adverse possession
finding and overruled the remainder of the Baughns’s issues, we need not
address Capps’s cross-issues.  See Tex.
R. App. P. 47.1.  The judgment is affirmed as modified.

 

FELIPE REYNA

Justice

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

Affirmed as
modified

Opinion
delivered and filed March 3, 2010

[CV06]









[1]               Milton and Letyr passed
away during the pendency of suit.  Amy is the executrix of their estates.

 





[2]               This tract is referred to
in the record as both a 3.66 acre tract and a 4.00 acre tract.

 





[3]               The Baughns presented
these arguments to the trial court by various motions, including special
exceptions, a motion to exclude title documents, a motion for new trial and/or
motion to reform judgment, and a motion for judgment notwithstanding the
verdict.  Each motion was either expressly overruled or overruled by operation
of law.





[4]               The Baughns also argue
that the evidence was inadmissible under Rule 193.6 and improperly admitted
under Rule 798.  See Tex. R. Civ. P. 193.6(a);
see also Tex. R. Civ. P.
798.  The Baughns did not
object on the basis of Rule 193.6.  See Tex. R. App. P. 33.1(a).  Additionally, Capps represented
that copies of all deeds had been produced.  The Baughns did not dispute this. 
Moreover, when Capps objected to the Baughns’s failure to file certified
documents pursuant to Rule 798, the Baughns argued that Rule 798 applies to
cases involving a common source of title, which they were not alleging.  The
trial court overruled Capps’s objection.





[5]               The Declaratory Judgments
Act now provides that boundary disputes may be pursued under the Act.  See
Tex.
Civ. Prac. & Rem. Code Ann.
§ 37.004(c) (Vernon 2008); see Lile v. Smith, 291 S.W.3d 75, 78 (Tex.
App.—Texarkana 2009, no pet.).  Martin still applies to title disputes.  See
Lile, 291 S.W.3d at 78.    

 





[6]               In a previous appeal, we reversed
the trial court’s summary judgment in favor of Capps, in part, because an
affidavit from the Baughns’s surveyor, in which the surveyor claimed to locate the
property, raised a genuine issue of material fact.  See Baughn v. Capps, No.
10-04-00305-CV, 2005 Tex.
App. LEXIS 5702, at *2-6 (Tex. App.—Waco July 20, 2005, no pet.) (mem. op.).  

     





[7]               Moreover, Baja Energy “only
applies when a wrongful act requires the claimant to incur attorney’s fees in
prior litigation involving a third party.”  Telfair v. Bridges,
161 S.W.3d 167, 170 (Tex. App.—Eastland 2005, no pet.).  Capps does not seek to
recover attorney’s fees incurred in prior litigation, but those incurred “in the original litigation with the
party alleged to have committed the wrongful act.”  Id.  He cannot
recover attorney’s fees under the rule pronounced in Baja Energy.





[8]               The Baughns urge us to
disregard the jury’s adverse possession finding because the trial court refused
to submit their request for instructions on the issues of permissive use and
repudiation.  However, no
jury instruction is required: 

 

Repudiation [] establishes the point at which adverse possession
commences in the case where possession was initially permissive. The repudiation requirement is therefore
subsumed in the requirement, generally applicable to all adverse possession cases, that the
possession must be commenced and continued under a claim of right hostile to
and inconsistent with that of another. An instruction on the statutory
definition of adverse
possession, which incorporates the notion of repudiation, is therefore sufficient.  

 

McLaren v. Beard,
811 S.W.2d 564, 569 (Tex. 1991).  The trial court defined “adverse possession”
and presented a jury question on adverse possession in accordance with the
applicable statutes.  See id. at 567-68; see also Tex.
Civ. Prac. & Rem. Code Ann. § 16.021(1) (Vernon 2002); Tex. Civ. Prac. & Rem. Code Ann. §
16.025(a)(1)-(3) (Vernon 2002).

 





[9]               The Baughns’s case law
addresses situations where there was either no suggestion of repudiation or the
adverse possession claimant could not show that notice of repudiation occurred
ten years before suit was filed.  See Mathews v. Thornell, 244 S.W.2d 574, 575-76 (Tex. Civ. App.—San Antonio 1951,
writ ref’d); see also Williams v. James, 346 S.W.2d 617, 619-20 (Tex.
Civ. App.—Eastland 1961, writ ref’d n.r.e.);
Commander v. Winkler, 67 S.W.3d 265, 267, 270 (Tex.
App.—Tyler 2001, pet. denied).





[10]
            Capps argues that the
Baughns failed to preserve this issue for appeal by neglecting to request a
jury instruction on fraud.  The Baughns are not challenging the jury charge.  See
Tex.
R. Civ. P. 278.





[11]             The Baughns argue that this
map was introduced in violation of Rules 791, 792, 193.6(a), and 1002.  As
previously discussed, Capps was not required to comply with Rules 791 and 792. 
Moreover, public tax records are available to both parties and need not be
produced in discovery.  See Barnett
v. County of Dallas,
175 S.W.3d 919, 924 (Tex. App.—Dallas 2005, no pet.).  Finally, the best
evidence rule was not raised when the map was offered, but was raised when
Capps’s testified to paying tax bills.  This testimony does not attempt to
prove the content of a document.  See Tex. R.
Evid. 1002.





[12]             The trial court’s charge
contains a similar definition of “substantially correct.”