IN THE
TENTH COURT OF APPEALS


No. 10-09-00111-CV

**TOM BAUGHN AND AMY HETRICK, AND
THE ESTATES OF MILTON BAUGHN
AND LETYR BAUGHN,**

                                                              **Appellants**

 **v.**

**CURTIS CAPPS,**

                                                              **Appellee**


From the 82nd District Court
Robertson County, Texas
Trial Court No. 97-01-15,275-CV


## MEMORANDUM  OPINION


Milton Baughn, Letyr Baughn, Tom Baughn, and Amy Hetrick[1] (the "Baughns") sued Curtis Capps for trespass to try title, seeking to quiet title to a four-acre tract of land.[2]  Capps counterclaimed for adverse possession.  A jury found in Capps's favor. On appeal, the Baughns challenge the: (1) admission of Capps's title documents; (2)

---

[1]        Milton and Letyr passed away during the pendency of suit.  Amy is the executrix of their estates.

[2]        This tract is referred to in the record as both a 3.66 acre tract and a 4.00 acre tract.

attorney's fee award; (3) legal and factual sufficiency of the evidence to support adverse possession; and (4) the jury's finding that their survey is not substantially correct.[3] In two cross-issues, Capps challenges: (1) the admission of the Baughns's deed evidence; and (2) the trial court's finding that the Baughns had any title to the tract. We modify the judgment and affirm the judgment as modified.

## TITLE DOCUMENTS

In issue one, the Baughns argue that Capps's title documents were inadmissible under Rules of Civil Procedure 791 and 792.

After an answer is filed, either party may serve the other with a written demand for an abstract. *See* TEX. R. CIV. P. 791. The abstract must be filed within thirty days of service, unless the trial court grants an extension for good cause shown; otherwise, the trial court may prohibit the party from offering documentary evidence of title. *See* TEX. R. CIV. P. 792; *see also Hunt v. Heaton*, 643 S.W.2d 677, 678 (Tex. 1982).

In a request for production, the Baughns sought a "copy of [Capps's] alleged abstract of title for the property that is the subject of this suit." Capps responded, "[N]o abstract has been prepared." About six days before trial, Capps filed a notice of filing of certified documents. The Baughns moved to exclude Capps's title documents, arguing that Capps failed to respond to their demand for an abstract. The trial court denied the motion, but granted the Baughns's running objection at trial.

---

[3]     The Baughns presented these arguments to the trial court by various motions, including special exceptions, a motion to exclude title documents, a motion for new trial and/or motion to reform judgment, and a motion for judgment notwithstanding the verdict. Each motion was either expressly overruled or overruled by operation of law.

Capps argues that a request for production is not a demand for an abstract. The Baughns argue that "request" includes a "demand," and vice-versa, and a contrary finding favors "verbal gamesmanship over 'a just, fair, equitable, and impartial adjudication of [substantive] rights.'" *See* TEX. R. CIV. P. 1.

Rules 791 and 792 give a party the right to demand creation of an abstract, but Rule 192 requires a party to produce documents within the party's "possession, custody, or control." TEX. R. CIV. P. 192.3(b). A request for production is not intended to seek documents that do not already exist. *See* TEX. R. CIV. P. 192.7(b) ("*Possession, custody, or control*…means that the person either has physical possession of the item or has a right to possession of the item…"); *see also In re Guzman*, 19 S.W.3d 522, 525 (Tex. App.—Corpus Christi 2000, orig. proceeding) ("The rules do not permit the trial court to force a party to create documents which do not exist, solely to comply with a request for production."). The Baughns's request for production, which does not even mention Rule 791, is not the proper vehicle for demanding an abstract. A contrary conclusion would violate the rules governing the scope of discovery. *See* TEX. R. CIV. P. 192.3(b); *see also* TEX. R. CIV. P. 192.7(b).

Because Capps was not required to comply with Rule 791, the trial court did not abuse its discretion by admitting evidence of Capps's title. We overrule issue one.[4]

---

[4] The Baughns also argue that the evidence was inadmissible under Rule 193.6 and improperly admitted under Rule 798. *See* TEX. R. CIV. P. 193.6(a); *see also* TEX. R. CIV. P. 798. The Baughns did not object on the basis of Rule 193.6. *See* TEX. R. APP. P. 33.1(a). Additionally, Capps represented that copies of all deeds had been produced. The Baughns did not dispute this. Moreover, when Capps objected to the Baughns's failure to file certified documents pursuant to Rule 798, the Baughns argued that Rule 798 applies to cases involving a common source of title, which they were not alleging. The trial court overruled Capps's objection.

**ATTORNEY'S FEES**

In issue two, the Baughns argue that *Martin v. Amerman*, 133 S.W.3d 262 (Tex. 2004) bars the jury's award of attorney's fees to Capps.

Under *Martin*, the trespass-to-try-title statute governs cases involving title disputes and attorney's fees cannot be recovered under the Declaratory Judgments Act.[5] *See Martin*, 133 S.W.3d at 263, 267. Because the trespass-to-try-title statute governs the title dispute in this case, Capps cannot recover attorney's fees under the Declaratory Judgments Act. *See id*; *see also Aguillera v. John G. & Marie Stella Kenedy Mem'l Found.*, 162 S.W.3d 689, 697-98 (Tex. App.—Corpus Christi 2005, pet. denied).

Capps argues that the award should be (1) upheld under equitable principals; or (2) remanded for a determination of whether fees are justified on equitable grounds.[6] *See Baja Energy, Inc. v. Ball*, 669 S.W.2d 836, 838-39 (Tex. App.—Eastland 1984, no writ) (A party may recover attorney's fees where "required to prosecute or defend the previous suit as a consequence of the 'wrongful act' of the defendant."). Capps does not point to any place in the record where this claim was presented to the trial court.[7] *See* Tex. R. App. P. 33.1(a). We sustain issue two.

---

[5] The Declaratory Judgments Act now provides that boundary disputes may be pursued under the Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004(c) (Vernon 2008); *see Lile v. Smith*, 291 S.W.3d 75, 78 (Tex. App.—Texarkana 2009, no pet.). *Martin* still applies to title disputes. *See Lile*, 291 S.W.3d at 78.

[6] In a previous appeal, we reversed the trial court's summary judgment in favor of Capps, in part, because an affidavit from the Baughns's surveyor, in which the surveyor claimed to locate the property, raised a genuine issue of material fact. *See Baughn v. Capps*, No. 10-04-00305-CV, 2005 Tex. App. LEXIS 5702, at *2-6 (Tex. App.—Waco July 20, 2005, no pet.) (mem. op.).

[7] Moreover, *Baja Energy* "only applies when a wrongful act requires the claimant to incur attorney's fees in prior litigation involving a third party." *Telfair v. Bridges*, 161 S.W.3d 167, 170 (Tex. App.—Eastland 2005, no pet.). Capps does not seek to recover attorney's fees incurred in prior litigation,

## LEGAL AND FACTUAL SUFFICIENCY

In issues three and four, the Baughns challenge the legal and factual sufficiency of the evidence to support (1) the jury's adverse possession finding; and (2) the jury's finding that the survey prepared by Billy Kling is not substantially correct.

### Standards of Review

Under legal sufficiency review, we ask "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review" and credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005).

Under factual sufficiency review of issues where the appellant did not bear the burden of proof, we "consider and weigh all of the evidence" and reverse only if the verdict is "so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust." *Checker Bag Co. v. Washington*, 27 S.W.3d 625, 633 (Tex. App.—Waco 2000, pet. denied). On issues where the appellant bears the burden of proof, we reverse only if, "considering all the evidence, the finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust." *Id*.

### Adverse Possession

Adverse possession constitutes "actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." TEX. CIV. PRAC. & REM. CODE ANN. § 16.021(1)

---

but those incurred "in the original litigation with the party alleged to have committed the wrongful act." *Id*. He cannot recover attorney's fees under the rule pronounced in *Baja Energy*.

(Vernon 2002). Under the five-year statute, the claimant must have held property in peaceable and adverse possession by: (1) cultivating, using, or enjoying the property; (2) paying applicable taxes on the property; and (3) claiming the property under a duly registered deed. TEX. CIV. PRAC. & REM. CODE ANN. § 16.025(a)(1)-(3) (Vernon 2002). The Baughns present five reasons supporting their contention that Capps failed to establish adverse possession.

First, the Baughns contend that Capps's use of the tract was permissive. The test for hostility is whether the acts performed by the claimant on the land and the use made of the land were of such a nature and character as to reasonably notify the true owner of the land that a hostile claim was being asserted to the property. *Bernal v. Chavez*, 198 S.W.3d 15, 19 (Tex. App.—El Paso 2006, no pet.). "[T]here must be an intention to claim property as one's own to the exclusion of all others; '[m]ere occupancy of land without any intention to appropriate it will not support the statute of limitations.'" *Tran v. Macha*, 213 S.W.3d 913, 915 (Tex. 2006). Where the original use of the land in controversy is permissive, it is presumed that the continued use thereof is also permissive in the absence of notice to the true owner of the repudiation of such permissive use and the assertion of an adverse claim. *Commander v. Winkler*, 67 S.W.3d 265, 270 (Tex. App.—Tyler 2001, pet. denied). "[R]epudiation must be plain, positive, and clear-cut" or the "permissive occupant" is "estopped from denying the title of the owner." *Id.* "[N]otice can be inferred, or there can be constructive notice." *Natural Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 194 (Tex. 2003).

In 1947, Milton purchased the four-acre tract from Stella Davison. Amy testified that Davison, her great-aunt, had owned the tract since 1913 and sold gravel from the tract. Milton testified that the tract was fenced and Davison showed him the physical location of the tract. Amy testified that the fence extended a long way unbroken. John Hetrick, Amy's husband, testified that Letyr showed him the tract and it was fenced.

Over the years, Milton leased 200 acres, including the disputed tract, to various lessees. He testified that anyone could use the tract and no one used it without permission. Knox Tidwell received Milton's permission to use the tract and agreed to maintain the fence. Milton never withdrew permission. Amy testified that her family never abandoned their interest in the tract.

In 1979, three of Knox's children deeded the tract to Don Dillon. Dillon later deeded the tract to Capps. Amy testified that Capps never approached the Baughns claiming title to the tract. Milton testified that he never gave Capps permission to use the tract, Capps never claimed the tract as his own, and he had no knowledge of Capps's use. Capps testified that he never sought permission to use the tract.

Because the Tidwells had permission to use the tract and because Capps's title derives from the Tidwells, the Baughns argue that Capps's use of the tract is permissive and has never been repudiated.[8] Capps responds that he never received the Baughns's permission to use the tract; thus, his use is not permissive.

---

[8] The Baughns urge us to disregard the jury's adverse possession finding because the trial court refused to submit their request for instructions on the issues of permissive use and repudiation. However, no jury instruction is required:

Permissive use is "not affected by the fact that the privilege is claimed by successors in interest of the party to whom the permissive use was originally given." *Williams v. James*, 346 S.W.2d 617, 619 (Tex. Civ. App.—Eastland 1961, writ ref'd n.r.e.). It is irrelevant that Capps never received direct permission from the Baughns.

Nevertheless, the record evidences constructive notice of repudiation.[9] Capps testified that, in the fall of 1991, he cleared the tract, enclosed it with a fence, placed horses and donkeys on the tract, and obtained a permit to bore under the road to provide water for the animals. He left some trees on the tract to provide shade. The fence matched that surrounding his property located across the road from the tract.

Milton testified that he leased the tract to Claude Henry, Robert Henry, and Steve Vogelsang, but neither he nor his lessees ever used the tract. He also testified that he entered an oil and gas lease that covered the tract. John Hetrick explained that the Baughns never used the tract for any other purpose except to lease it. Edward Tidwell, Knox's son, testified that the Tidwells never put a horse or cattle on the tract. Other

---

> Repudiation [] establishes the point at which adverse possession commences in the case where possession was initially permissive. The repudiation requirement is therefore subsumed in the requirement, generally applicable to all adverse possession cases, that the possession must be commenced and continued under a claim of right hostile to and inconsistent with that of another. An instruction on the statutory definition of adverse possession, which incorporates the notion of repudiation, is therefore sufficient.

*McLaren v. Beard*, 811 S.W.2d 564, 569 (Tex. 1991). The trial court defined "adverse possession" and presented a jury question on adverse possession in accordance with the applicable statutes. *See id*. at 567-68; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 16.021(1) (Vernon 2002); TEX. CIV. PRAC. & REM. CODE ANN. § 16.025(a)(1)-(3) (Vernon 2002).

[9]    The Baughns's case law addresses situations where there was either no suggestion of repudiation or the adverse possession claimant could not show that notice of repudiation occurred ten years before suit was filed. *See Mathews v. Thornell*, 244 S.W.2d 574, 575-76 (Tex. Civ. App.—San Antonio 1951, writ ref'd); *see also Williams v. James*, 346 S.W.2d 617, 619-20 (Tex. Civ. App.—Eastland 1961, writ ref'd n.r.e.); *Commander v. Winkler*, 67 S.W.3d 265, 267, 270 (Tex. App.—Tyler 2001, pet. denied).

than repairing the fence, he did nothing to the tract. His family did not need to use the tract. Edward testified that the tract did not appear to be used and he never saw anyone using the tract, including the Baughns. Capps testified that Don Dillon never used the tract and he did not believe that any of the Baughns's lessees had ever used the tract. Walter Nunn and Danny Tarver testified that the tract was covered in yaupon and brush before being cleared. Amy testified that, had Capps not cleared the tract, it would have been covered in trees like the surrounding property. She admitted that Capps had performed acts of ownership. In fact, John explained that when Robert Henry notified the Baughns about the clearing of the tract, Robert thought the tract had been sold.

The Baughns had notice of a change in the condition of the tract inconsistent with the use to which it had been put in the previous years. This is sufficient notice of repudiation of any permissive use. *See Tex-Wis Co. v. Johnson*, 534 S.W.2d 895, 901 (Tex. 1976) ("[A] change in the use or character of possession of the land is sufficient to support a finding of notice of repudiation"); *see also Witcher v. Bennett*, 120 S.W.3d 922, 925 (Tex. App.—Texarkana 2003, pet. denied) ("Constructive notice can be established by…change in the use or character of possession of the land.").

Second, the Baughns contend that Capps cannot establish wholly exclusive possession because, during his use of the tract, the tract was under lease, the Tidwells were authorized to use the tract, and the tract was part of an oil and gas lease.

Exclusive possession of the land is required to support an adverse possession claim; the adverse possession claimant must wholly exclude the owner of the property.

*Turner v. Mullins*, 162 S.W.3d 356, 367 (Tex. App.—Fort Worth 2005, no pet.). Joint or common possession by the adverse possession claimant and the owner defeats the requisite quality of exclusiveness. *Id.*

In *Solis v. La Brisa Land & Cattle Co.*, 361 S.W.2d 631 (Tex. Civ. App.—San Antonio 1962, no writ), Solis could not establish exclusive possession because La Brisa "exercised certain undisputed acts of ownership over the property in which Solis acquiesced and made no protest." *Solis*, 361 S.W.2d at 632. La Brisa granted and recorded three rights-of-way to oil and gas companies, after which the "grantees entered, cleared the land, erected cattle guards through fences, installed pipe lines, maintained right-of-ways, and caused damages which Solis acknowledged." *Id.* La Brisa also leased the property to a tenant who resided on the property. *See id.*

Unlike *Solis*, the record in this case does not establish sharing of the tract by the Baughns/lessees and Capps. *See id.*; *see also Tran*, 213 S.W.3d at 915 ("Haliburton shared use of the strip with the Buddes, so her use was not inconsistent with or hostile to their ownership."). The record shows that neither the Baughns nor their lessees entered the tract. Rather, the evidence establishes Capps's actual use and possession of the tract, such as clearing and fencing the tract, installing a water source, and grazing animals. *See McDonnold v. Weinacht*, 465 S.W.2d 136, 142 (Tex. 1971) (A showing of grazing and a sufficient enclosure will support an adverse possession claim); *see also Shouse v. Roberts*, 737 S.W.2d 354, 357 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.); *Kinder Morgan N. Tex. Pipeline, L.P. v. Justiss*, 202 S.W.3d 427, 439-40 (Tex. App.—

Texarkana 2006, no pet.). We cannot say that there existed any joint or common use of the tract as to defeat a finding of exclusive possession.

Third, the Baughns argue that Capps provided "[v]ague, indefinite, and unbelievable evidence support[ing] 'the date' when [he] allegedly cleared and fenced the land in dispute." An adverse possession claimant must show possession that is "continuous and is not interrupted by an adverse suit to recover the property." TEX. CIV. PRAC. & REM. CODE ANN. § 16.021(3).

Milton testified that the tract was not cleared and fenced until July 4 or Labor Day 1992. Amy and John testified that they observed the tract in January 1992 and it was not cleared. According to John, the tract was heavily wooded and he observed survey stakes and a deteriorating fence. Capps testified that he cleared, fenced, and used the tract in fall 1991. Tarver testified that he noticed improvements to the tract in either 1989 or 1990 and later noticed animals on the tract. Nunn testified that the tract was cleared in either summer or fall 1991. Both Tarver and Nunn noticed animals on the tract, water for the animals, and a fence surrounding the tract that matched the fence surrounding Capps's other property. Suit was filed in January 1997.

In light of this testimony, there is conflicting evidence regarding the date when Capps's possession commenced. The jury, as trier of fact, bore the burden of resolving the conflicts in this evidence. *See City of Keller*, 168 S.W.3d at 819-20; *see also Khorshid, Inc. v. Christian*, 257 S.W.3d 748, 758 (Tex. App.—Dallas 2008, no pet.). In doing so, the jury was free to accept Capps's testimony that his term of adverse possession began in 1991, thereby establishing peaceable possession for a period of five years. *See City of*

*Keller*, 168 S.W.3d at 822; *see also Tex. Dep't of Assistive & Rehabilitative Servs. v. Howard*, 182 S.W.3d 393, 407 (Tex. App.—Austin 2005, pet. denied).

Fourth, the Baughns contend that Capps cannot claim the tract under a duly registered deed because he procured his deed via fraud.[10]

The Federal Land Bank of Houston conveyed 203 acres to K.E. Tidwell. Years later, Edward Tidwell and his siblings conveyed 198 acres to Dillon, trustee. Capps, who operated a title company, notarized the deed. Dillon later conveyed the tract to himself. The deed of trust described 198 acres, but the deed described 202 acres. Capps notarized both documents. In 1982, Dillon conveyed a 5/6 interest in the four-acre tract to Capps and conveyed the entire interest in June 1991.

Donald Garrett, a surveyor and engineer, testified that the Tidwells' deed does not include the tract; thus, they did not own it and could not sell it. Edward testified that Knox never claimed to own the tract and told Edward that "Pete Baughn" owned the tract. He testified that when he and his siblings sold property to Dillon, they sold 198 acres and did not intend to convey the tract, but only that property owned by Knox, which did not include the tract.

"[I]t is not necessary that the deed, under which the claim is made, convey any title." *Roseborough v. Cook*, 108 Tex. 364, 194 S.W. 131, 131-32 (1917). The grantor may be wholly barren of any vestige of title; the deed may, therefore, pass no semblance of title; yet, if it describes and purports to convey the land and tested by itself is upon its face a

---

[10] Capps argues that the Baughns failed to preserve this issue for appeal by neglecting to request a jury instruction on fraud. The Baughns are not challenging the jury charge. *See* TEX. R. CIV. P. 278.

good deed, it meets the requirement. *Id*. In *West End API, Ltd. v. Rothpletz*, 732 S.W.2d 371 (Tex. App.—Dallas 1987, writ ref'd n.r.e.), the Dallas Court held:

> Although the deed may have attempted to convey a greater interest than Jayson actually owned, the defect, if any, was not apparent from the face of the instrument. Thus, recording of the deed was sufficient to satisfy the third requirement of the test.

*Rothpletz*, 732 S.W.2d at 375.

Even if the deed to Capps conveyed a greater interest than that owned by the grantor, such an error is not apparent from the face of the deed. Capps's deed, while insufficient to establish title, is sufficient to satisfy element three of the five-year statute. *See Roseborough*, 194 S.W. at 131-32; *see also Rothpletz*, 732 S.W.2d at 375; *Chamberlain v. Showalter*, 23 S.W. 1017, 1019 (Tex. Civ. App.—San Antonio 1893, no writ) (Although deed procured by forgery was "inadmissible as a muniment of title, [it] would have been admissible for the purpose of a deed in connection with the five years statute").

Finally, the Baughns contend that Capps failed to establish payment of taxes. An adverse possession claimant must show "consecutive payment of taxes." *Mem'l Park Med. Ctr., Inc. v. River Bend Dev. Group, L.P.*, 264 S.W.3d 810, 818 (Tex. App.—Eastland 2008, no pet.). Payment may be established "by receipt issued by tax collector, the record of taxes collected kept in the office of the tax collector, or by direct or circumstantial evidence." *Holasek v. Janek*, 244 S.W. 285, 286 (Tex. Civ. App.—Dallas 1922, no writ). Payment need not "be established by any particular form of evidence to an absolute certainty, but only to a reasonable certainty like any other ordinary fact in dispute and required to be established in the course of a judicial investigation." *Id*.

Milton testified that he paid taxes on the tract and that Amy and Tom paid the taxes after he conveyed the tract to them. Amy testified that her family has paid taxes on the tract since 1913 when Davison owned the tract. John testified that Amy and Tom paid taxes on a total of 37.96 acres or three separate tracts of land, including the disputed tract. The Baughns produced tax receipts showing that they paid taxes on large pieces of property, which they alleged to include the disputed tract. Capps testified that he has paid taxes on the tract since 1982. An aerial tax map from the appraisal district identifies Capps as the owner of a small tract across the street from the property where he resides. Capps testified that this is the same tract that he has fenced. He further testified that tax records show that he owns the tract.

The Baughns maintain that the evidence shows that they, not Capps, paid taxes. However, the evidence shows that Milton and Letyr paid taxes on approximately 200 acres and that Tom and Amy paid taxes on approximately 37 acres. Although they testified that this acreage includes the disputed tract, such evidence is insufficient. *See Welch v. Mathews*, 642 S.W.2d 829, 832 (Tex. App.—Tyler 1982, no writ). Capps's testimony that he paid taxes on the disputed tract, supported by the tax map, is sufficient to support payment of taxes.[11] *See McDonough v. Jefferson County*, 79 Tex. 535, 15 S.W. 490, 491 (1891) ("There was no error committed in permitting the payment of taxes to be proved by oral evidence over the objection that the tax receipts or record

___

[11] The Baughns argue that this map was introduced in violation of Rules 791, 792, 193.6(a), and 1002. As previously discussed, Capps was not required to comply with Rules 791 and 792. Moreover, public tax records are available to both parties and need not be produced in discovery. *See Barnett v. County of Dallas*, 175 S.W.3d 919, 924 (Tex. App.—Dallas 2005, no pet.). Finally, the best evidence rule was not raised when the map was offered, but was raised when Capps's testified to paying tax bills. This testimony does not attempt to prove the content of a document. *See* TEX. R. EVID. 1002.

evidence should be produced, nor over the objection that the evidence was general and did not show the amount paid for any particular year."); *see also Holasek*, 244 S.W. at 286.

In summary, the evidence is legally and factually sufficient to support the jury's finding that Capps adversely possessed the disputed tract continuously for five years. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.025(a)(1)-(3); *see also City of Keller,* 168 S.W.3d at 827; *Checker Bag*, 27 S.W.3d at 633. We overrule issue three.

**Survey**

That a survey must be substantially correct "does not mean that it must be absolutely correct, nor does it mean one that is merely sufficient to call the matter to the attention of the court will suffice." *Aransas County Navigation Dist. No. 1 v. Johnson*, No. 13-05-00563-CV, 2008 Tex. App. LEXIS 3153, at *27-28 (Tex. App.—Corpus Christi Apr. 29, 2008, pet. denied) (mem. op.). "It means *one that in substance and in the main is correct, and that is not affirmatively incorrect*." *Id.*[12]

The Baughns argue that they proved, as a matter of law, that the survey prepared by their surveyor Billy Kling is substantially correct. They further contend that the jury's contrary finding conflicts with its finding that the survey is "located in whole or in part in the tract claimed by the [Baughns] and [Capps] under the 3.66 acre deed;" *i.e.*, the correction deed from Milton to Amy and Tom. Donald Garrett formulated the description in the correction deed.

---

[12] The trial court's charge contains a similar definition of "substantially correct."

The deeds in the Baughns's chain of title contain different dimensions for the disputed tract. The dimensions in an 1881 deed are 150 by 150 varas. The dimensions in the deed to Davison are 155 by 145 by 155 by 145 varas.

Kling acknowledged the "variances" in the Baughns's chain of title. He found the 1881 deed contained the best description of the tract. All of the deeds described the tract as beginning "near the town of Sutton" and located from the center line of the railroad. Kling testified that Sutton is five or six miles south of Hearne, "[g]enerally, at the intersection of Arrowmoon farm-to-market road and Highway 6 or railroad." An ownership map revealed one four-acre tract in the "vicinity of Sutton."

Kling also discovered a "2 by 3 box culvert," which he determined to be the "rock culvert" described in the deeds. This culvert served as the "nucleus" of his starting point. He also located a cross-tie, which appeared to be an old fence post, near the northeast corner of the tract. The deeds refer to fence corners. The cross-tie is outside Capps's fence and is about 2.2 feet outside the box of the tract. Finally, he used the railroad to identify the tract because the deeds placed the tract either perpendicular or parallel to the railroad.

After reviewing the 1881 deed and adjoining deeds and honoring the calls from those deeds, Kling concluded that the best location of the tract could be determined by using the reference in the Tidwell deed. He located the tract by using the 1881 deed, but changed its location by using the Tidwell deed. He did not use the 150 by 150 varas description. He was willing to listen to anyone with a "better way of doing it."

Kling admitted that a significant part of his description is located in Capps's description. He agreed that the ownership map shows the Baughn property "4 acres off of the road, north up the track." He admitted that his description does not conform to Garrett's, but a "substantial part" of Garrett's survey represents the tract conveyed to Milton. He testified, "My professional opinion is that 4 acres that's delineated on that bottom map down there is the best I know how to do to locate that 4 acres."

Kling explained that he is required to "make an evaluation as to the intent of the parties" and find "the best evidence of that intent." He made his best effort to resolve problems in the deeds by doing "[w]hat I believe was the intent of the people involved in the property." When asked if he located the tract in the Baughn deed, Kling stated, "I don't know that I'm ever satisfied with much of my work. I did the best I could." He stated that his description is the "best location of the intent of the people and what has occurred over the last 75 years out there." Kling opined that he had located the tract with "reasonable certainty," and that his survey is "substantially correct."

Garrett testified to reviewing deeds in the chain of title and surrounding deeds to determine the location of tract. He explained that "near the town of Sutton" is impossible to locate. Yet, he could locate Sutton on a map and identify the one 4-acre tract denoted on the map and admitted that Love Abstract maps showed the tract in a different location than that described in his survey.

Garrett testified that his description does not reflect a curvature in the tract, but the deeds in the Baughns's chain of title do not contain a curvature. Garrett admitted that his description is the same as that described in Capps's deed, but that Capps's deed

was executed by grantors who did not own the tract. According to Garrett, the Tidwell deed specifically excludes the tract because the deed describes "going down the railroad and around the 4-acre tract to the county road." When Dillon bought the tract, "they just went straight on past the corner of the four acres and it includes the four acres in the deed." He testified that the Love Abstract maps placed the tract in a different location, north of the road, but explained that this is irrelevant because Tidwell could not convey the four acres to Dillon.

Garrett further admitted that his description overlaps Kling's. However, he explained that Kling's description excluded a piece of property that the Baughns had adversely possessed. When asked whether the 150 by 150 varas description should have been used, Garrett responded, "Not necessarily" because of adverse possession. Garrett opined that, if Kling was "trying to show what the deed said the property is," then he "might not have been surveying the whole property;" Kling "might have been showing what the deed describes, which is not necessarily what the property is." Garrett testified that the correction deed is the best description of the Baughn tract.

The Baughns argue that Kling's survey is substantially correct because Kling attempted to follow in the footsteps of the original surveyor by locating objects described in the deeds and honoring calls in the deeds. *See TH Invs., Inc. v. Kirby Inland Marine, L.P.*, 218 S.W.3d 173, 204 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (When finding the lines of a survey, "[t]he cardinal rule is that the footsteps of the original surveyor, if they can be ascertained, should be followed.").

The jury, however, was faced with two different descriptions of the tract from two different surveyors. Kling considered the applicable deeds and identifying objects in the deeds, but ultimately concluded that his description, which did not follow the dimensions in the deed he believed to contain the best description of the tract, was accurate because of what he believed to be the parties' intent. Yet, the "underlying purpose of retracing the original surveyor's footsteps is to determine that *original surveyor's intent*." *Dixon v. Dewhurst*, 169 S.W.3d 515, 519 (Tex. App.—Texarkana 2005, no pet.) (emphasis added). "[J]unior surveys cannot create ambiguity in the calls or change the location of a senior survey." *Id*. at 520.

Additionally, both surveyors testified that their descriptions differ and explained the differences between their findings. Both surveyors testified that their respective descriptions accurately depict the location of the tract. This testimony left the jury with the responsibility of determining whether Kling's survey was substantially correct in light of a competing survey. As trier of fact, the jury was entitled to reject Kling's testimony. *See City of Keller*, 168 S.W.3d at 819; *see also Aransas*, 2008 Tex. App. LEXIS 3153, at *22-23 (Declining to disregard jury's conclusion that survey was substantially correct); *Khorshid*, 257 S.W.3d at 758; *Howard*, 182 S.W.3d at 407. The jury could reasonably conclude that Kling's survey was not substantially correct. *See Fears v. Texas Bank*, 247 S.W.3d 729, 737 (Tex. App.—Texarkana 2008, pet. denied) (Record did not show that surveyor could locate the twenty-acre tract with "reasonable certainty based on the data contained in the deed or any other writing;" "In order to establish the

precise location of the twenty acres, one must engage in inference and conjecture to determine its boundaries.").

Because the surveys overlap, the jury could also reasonably conclude that Kling's survey, although not substantially correct, is located in whole or in part in the tract described by Garrett in the correction deed. This is especially true given Garrett's testimony that Kling excluded a portion of the tract and that Kling may not have surveyed the whole property. Thus, we cannot say that the jury's findings conflict. *See Bender v. S. Pacific Transp. Co.*, 600 S.W.2d 257, 260 (Tex. 1980) ("A court may not strike down jury answers on the ground of conflict if there is any reasonable basis upon which they can be reconciled;" "the question is whether there is any reasonably possible basis upon which they may be reconciled."). We overrule issue four.

### CONCLUSION

Having found that Capps is not entitled to attorney's fees under the Declaratory Judgments Act, we modify the judgment to delete the award of attorney's fees. Having affirmed the adverse possession finding and overruled the remainder of the Baughns's issues, we need not address Capps's cross-issues. *See* TEX. R. APP. P. 47.1. The judgment is affirmed as modified.

FELIPE REYNA
Justice

Before Chief Justice Gray,
 Justice Reyna, and
 Justice Davis
Affirmed as modified
Opinion delivered and filed March 3, 2010
[CV06]